```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA         :      08 CR. 84 (DC)

        - v. -                   :

Jason Smith,                     :

                Defendant.       :

---------------------------------X
```

**DEFENDANT JASON SMITH'S RESPONSE TO**
**THE GOVERNMENT'S MOTIONS *IN LIMINE***

                                LEONARD F. JOY, ESQ.
                                Federal Defenders of New York
                                Attorney for Defendant
                                **JASON SMITH**
                                52 Duane Street - 10th Floor
                                New York, New York 10007
                                Tel.: (212) 417-8734/(718) 330-1208

                                **FIONA M. DOHERTY**
                                **DEIRDRE D. VON DORNUM**

                                <u>Of</u> <u>Counsel</u>

TO:  **MICHAEL J. GARCIA, ESQ.**
     United States Attorney
     Southern District of New York
     One. St. Andrew's Plaza
     New York, New York 10007
     Attn: **AMIE N. ELY, ESQ.**
          Assistant United States Attorney

July 23, 2008

BY HAND DELIVERY AND ECF

The Honorable Denny Chin
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Jason Smith**
            **08 Cr. 84 (DC)**

Dear Judge Chin:

      We write in response to the government's letter-brief of July 17, 2008 ("Gov't Br."), which simultaneously seeks free reign to cross-examine the defendant and preclusion of the defense's ability to defend Mr. Smith, by asking the Court to limit the defense's cross-examination concerning the police officers' credibility, potential bias, and investigative decisions, and to prohibit the defense from using certain demonstrative evidence. Mr. Smith faces a fifteen-year mandatory minimum charge for gun possession. We must be permitted to carry out our Sixth Amendment obligation to defend him. The government has two police witnesses it asserts will testify that he possessed the charged gun. It should carry out its burden through credible witness testimony, not by hamstringing the defense or inflaming the jury. Accordingly, in addition to the requests made in the initial defense motions *in limine*, we ask that the Court (1) permit the defense to cross-examine Officer Sullivan on the substantiated CCRB allegations; (2) allow the government to cross-examine Mr. Smith on only one felony conviction; (3) uphold the defense's right to question the investigative techniques that were or were not employed by the government; (4) permit the defense to inquire into the circumstances of Mr. Smith's stop and arrest, and any prior interactions between Mr. Smith and these officers; and, (5) deny the government's request for a blanket preclusion of an entire category of demonstrative evidence.

      Under separate cover, we are submitting our motion *in limine* pertaining to the prison phone calls whose admission the government will seek.

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 3
Southern District of New York

    Re:    <u>United States v. Jason Smith</u>
            08 Cr. 84 (DC)

**I. THE DEFENSE SHOULD BE PERMITTED TO CROSS-EXAMINE OFFICER SULLIVAN REGARDING HIS LYING ABOUT HIS IDENTITY, FAILING TO FILE A REQUIRED POLICE REPORT, AND WRONGLY FRISKING AND SEARCHING A CIVILIAN.**

    The government seeks to preclude cross-examination of Police Officer Patrick Sullivan regarding four allegations of misconduct that the Civilian Complaint Review Board ("CCRB") Complaint substantiated against him, arguing that the substantiated allegations "only weakly impact [the] officer's credibility," Gov't Br. at 3, despite the fact that these adverse findings largely concern Officer Sullivan's effort to conceal his identity when he was involved in wrongdoing, exactly the type of conduct that the government in the same brief seeks to use to cross-examine Mr. Smith. As to the defendant, the government asserts "[i]f a man would lie about his name, a jury may reasonably infer that he would lie about other matters, even on the witness stand." Gov't Br. at 12, quoting <u>United States v. Ojeda</u>, 23 F.3d 1473, 1477 (8th Cir. 1994). The government cannot have it both ways. Just as it is appropriate to cross-examine Mr. Smith on his alleged use of aliases (as the defense stated in its initial motion in limine), it is appropriate for Officer Smith to be cross-examined on his effort to conceal his identity and cover-up his wrongdoing.

    Because Officer Sullivan's prior instances of untruthfulness and failure to follow NYPD procedure, as substantiated by the CCRB, is precisely the sort of conduct contemplated by Federal Rule of Evidence 608(b), the Court should allow inquiry on cross-examination regarding Officer Sullivan having illegally frisked and searched a civilian, then provided an incorrect shield number, and having subsequently failed to produce required police paperwork concerning this incident.

## Background

    Officer Patrick Sullivan was the arresting officer in this case. Officer Sullivan completed all the NYPD paperwork related to Mr. Smith's arrest and he swore out the state complaint against Mr. Smith. Officer Sullivan is also the alleged finder of a bag of marijuana in Mr. Smith's pocket and hearer of a statement by Mr. Smith.

    The CCRB substantiated four allegations of misconduct against Officer Sullivan regarding an incident that occurred on January 26, 2007. The substantiated allegations were that Officer Sullivan (1) improperly frisked a civilian; (2) improperly searched a civilian; (3) refused to provide his name or shield number to a civilian; and (4) failed to document the incident as required by department guidelines by filing a Stop and Frisk Report. <u>See</u> CCRB Case Closing

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 4
Southern District of New York

  Re: <u>United States v. Jason Smith</u>
     <u>08 Cr. 84 (DC)</u>

Form.

  The CCRB determined that Officer Sullivan not only wrongly frisked and searched a civilian, but that he violated basic department guidelines in order to conceal his identity and avoid responsibility for his actions. At the time of the incident, Officer Sullivan had been patrolling the 48th Precinct as a police officer for almost five years and he had been a member of the 48th Precinct Anti-Crime Team for approximately one year. CCRB Case Closing Report ¶ 4. As a result, Officer Sullivan would have been well aware of the NYPD procedures regarding the frisking and searching of individuals. CCRB Case Closing Report ¶ 9. Nevertheless, the CCRB found that Officer Sullivan improperly frisked and searched a young Hispanic college student. CCRB Case Closing Report ¶ 2, 8. The CCRB found that after Officer Sullivan committed these acts of misconduct, he then ignored the young student when he requested Officer Sullivan's shield number and provided a false shield number to the student when he was asked for his shield number a second time. CCRB Case Closing Report ¶ 10. A police officer's shield number is the primary means by which an officer is identified. This is why NYPD Patrol Guide Procedure 203-09 dictates that police officers are to provide their "rank, name, shield number and command" to "anyone" who requests them. CCRB Case Closing Report ¶ 10. As a result, it is a serious act of misconduct for an officer to refuse to provide his shield number to a civilian, let alone to purposely give an incorrect number.

  Officer Sullivan's refusal to provide his shield number is, however, truly troubling because it was part of a series of acts of misconduct designed to conceal his identity after the improper frisk and search. During his CCRB interview, Officer Sullivan acknowledged that he had a duty to complete a Stop and Frisk Report as required by Patrol Guide Procedure 212-11. See CCRB Case Closing Report ¶ 4; CCRB Case File enclosure 3a. Nevertheless, the CCRB found that Officer Sullivan failed to file a Stop and Frisk Report regarding his interaction with the young student that he head improperly frisked and searched. CCRB Case Closing Report ¶ 10. The CCRB also noted that Officer Sullivan failed to document his encounter with the young student in his memo book as required by department guidelines. See CCRB Case Closing Report ¶ 4; CCRB Case File Enclosure 3b (Patrol Guide Procedure 212-11 dictates that officers are to enter the details of stop and frisk encounters in their activity logs). As a result, it is clear that Officer Sullivan's refusal to provide his shield number to the civilian that he improperly stopped and frisked was part of a course of conduct designed to ensure that he would not be held responsible for his acts of misconduct.

  Officer Sullivan stated that he had no recollection of any interaction with the young student. Because Officer Sullivan had no recollection, there is not an adverse credibility finding. Despite his lack of recollection, however, the CCRB substantiated every aspect of the young

Honorable Denny Chin                                                 July 23, 2008
United States District Judge                                         Page 5
Southern District of New York

      Re:    <u>United States v. Jason Smith</u>
             <u>08 Cr. 84 (DC)</u>

student's complaint against Officer Sullivan.

## Discussion

      Rule 608(b) permits inquiry into "specific instances of the conduct of a witness" where that conduct is "probative of truthfulness or untruthfulness" and where the questioning concerns "the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 608(b); see also <u>United States v. Bagaric</u>, 706 F.2d 42, 65 (2d Cir. 1983) ("Pursuant to Fed.R.Evid. 608(b), the trial judge may permit cross-examination into specific acts of misconduct if 'probative of truthfulness or untruthfulness'"). The decision to allow such inquiry rests within the discretion of the trial court and is guided by Federal Rules of Evidence 403 and 611. See <u>United States v. Nelson</u>, 365 F.Supp.2d 381 (S.D.N.Y. 2005). The Second Circuit has noted that "[w]ide latitude should be allowed . . . when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion 'cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony'." <u>United States v. Pedroza</u>, 750 F.2d 187, 195-96 (2d Cir. 1984) (quoting <u>Gordon v. United States</u>, 344 U.S. 414, 423 (1953) (citations omitted)).

      In evaluating the probative value of the evidence and whether to allow inquiry, courts should consider several factors, including 1) how important the testimony of the witness in question is to the current case; 2) the extent to which the evidence is probative of truthfulness or untruthfulness; 3) the extent to which the evidence is probative of other relevant matters; 4) the extent to which the circumstances surrounding the conduct are similar to the circumstances of the subject of the current testimony; and 5) the proximity in time to the subject of the current testimony. <u>Nelson</u>, 365 F.Supp.2d at 390, <u>citing</u> John W. Strong, <u>McCormick on Evidence</u> § 41 and Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 608.22[2][c][iv] (2d ed.1997).

      In <u>Nelson</u>, the Honorable Victor Marrero permitted cross-examination of a police officer regarding a CCRB complaint under circumstances similar to those here. <u>Nelson</u> involved a trial for possession of a firearm where the police officer who found the firearm had previously been found to have lied about a prior, unconnected search. <u>Id.</u> at 385. The finding that the officer had previously lied was made by an NYPD commissioner as part of a CCRB investigation. <u>Id.</u> In allowing the cross-examination, Judge Marrero found that the finding was highly probative of the officer's character for truthfulness, that the officer was "a key Government witness since he is the only officer who personally recovered the guns," and that since the event underlying the CCRB finding was approximately two years prior to the trial incident, it was "recent enough to maintain a high level of probity regarding [his] character for truthfulness." <u>Id.</u> at 390-91. Similarly, last

Honorable Denny Chin                                            July 23, 2008
United States District Judge                                    Page 6
Southern District of New York

      Re:     **United States v. Jason Smith**
                  **08 Cr. 84 (DC)**

year in United States v. Kareem Edwards, a gun possession trial, the Honorable William H. Pauley rejected the same arguments put forth by the government here and permitted cross-examination of the arresting officer on a substantiated CCRB complaint regarding his improper stop and frisk of a civilian. 07 Cr. 719 (WHP), December 7, 2007, Tr. at 5.

      Precisely the elements found by Judge Marrero and Judge Pauley are present here. Officer Sullivan is a key witness for the government. He is the arresting officer, who was responsible for filling out all paperwork concerning Mr. Smith's arrest and for swearing out the complaint that led to the initial criminal charges against him, and he will testify that he found marijuana on Mr. Smith during the course of a search, the basis for the felony drug possession charge, and that he heard a post-arrest statement by Mr. Smith. The underlying conduct examined by the CCRB involved Officer Sullivan conducting an unwarranted frisk and search, lying about his identity to the civilian he had wrongly frisked and searched, and then failing to complete required NYPD paperwork to document that frisk and search. Based on the allegations substantiated against him, Officer Sullivan not only lied to the civilian but violated police department guidelines in an effort to conceal his own misconduct. The CCRB findings that he gave an incorrect shield number, and then failed to produce a stop and frisk report could not possibly pertain more directly to his character for truthfulness: he is willing to lie, both by commission and omission, in order to conceal his official wrongdoing. The CCRB findings relate directly to his character for truthfulness in a situation similar to that in this case, i.e., the veracity of the statements he made in official NYPD reports and of his description of what he found and heard during a search. Finally, the CCRB findings were made close in time to the incident in question (here less than a month before Mr. Smith's arrest), and therefore they are recent enough to maintain their probative integrity.

      The fact that the CCRB did not make an explicit finding regarding Officer Sullivan's credibility does not diminish the significance of the allegations that the CCRB substantiated against Officer Sullivan. The CCRB determined that Officer Sullivan violated numerous police department guidelines in order to avoid being identified as the officer who improperly frisked and searched Jose Santana on January 26, 2007. Mr. Santana, however, recalled both the license plate number of the police car that stopped him and what the officers who stopped him looked like. See CCRB Case Closing Report ¶ 2-3. Using this information, after six months of painstaking investigation, the CCRB was able to positively identify Officer Sullivan. See CCRB Case File Enclosure 30f. As a result, the CCRB was unable to interview Officer Sullivan until seven months after the incident occurred, at which point Officer Sullivan state he had no recollection of the incident. At this late date, the CCRB could not reasonably expect Officer Sullivan to recall a brief and relatively routine car stop. Consequently, the Court should not view the fact that the CCRB did not find that Officer Sullivan provided a false statement during his

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 7
Southern District of New York

      Re:    <u>United States v. Jason Smith</u>
             <u>08 Cr. 84 (DC)</u>

CCRB interview as evidence indicating that he did not commit serious acts of misconduct that reflect negatively on his credibility.

      The defense should be permitted to ask Officer Sullivan whether he was found by the CCRB to have improperly frisked and searched a person, whether he subsequently refused to give his shield number and instead gave an incorrect shield number, and then failed to produce the NYPD report required to document this incident.  The defense will not inquire into the details of the frisk and search, but it is relevant to this case that the incident in which Officer Sullivan lied and failed to properly document was a search of a civilian, since Officer Sullivan will be testifying that he recovered a bag of marijuana from Mr. Smith during a search of him, and then documented that search.  Indeed, it appears that Officer Sullivan's testimony on this point forms the heart of the government's evidence on the drug possession charge.  The giving of the incorrect shield number bears directly on both his capacity for lying and his propensity for doing so in order to conceal his own wrongdoing.  The failure to produce the report shows his willingness to manipulate or violate police protocol regarding official reports for his own purposes, also relevant here given that he is the arresting officer who produced all the relevant paperwork, including the evidence vouchers and state criminal complaint.

      Contrary to the government's assertions, permitting inquiry of Officer Sullivan regarding his prior conduct would not involve a "protracted and confusing sideshow," Gov't Br. at 3.  The defense does not seek to introduce extrinsic evidence of the prior misconduct, and counsel must take Officer Sullivan's answers as they are.  <u>See</u> <u>Weinstein's Federal Evidence</u> § 608.22[1] ("the examiner must take (or is bound by) the witness's answer").  However, the defense should be allowed to make reference to the CCRB's substantiation of the allegations in questions posed on cross-examination.  This is not "extrinsic evidence."  <u>See</u>, <u>e.g.</u>, <u>United States v. Bagaric</u>, 706 F.2d 42, 65 (2d Cir. 1983) (affirming decision to permit Government to ask the defendant whether an Immigration Judge had found his testimony and evidence not to be credible); <u>Nelson</u>, 365 F.Supp.2d at 389-90 (permitting references to NYPD Commissioner's adverse credibility finding in questions posed on cross-examination). Nor is the inquiry unfairly prejudicial to the government.  Cross-examination would relate solely to Officer Sullivan's conduct during searches, truthfulness while on duty, and the veracity of his police reports.  There is nothing inflammatory or shocking about the inquiry, and its focus lies at the heart of what Rule 608(b) permits -- inquiry into specific instances of conduct that are probative of truthfulness or untruthfulness.

      A substantiated finding by the CCRB is a significant event.  It is highly unusual for the CCRB to substantiate an allegation.  The CCRB finds that allegations of misconduct do not warrant discipline in the vast majority of the cases it investigates.  For the year 2007, only 4.5

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 8
Southern District of New York

      Re:    **United States v. Jason Smith**
                **08 Cr. 84 (DC)**

percent of all allegations reported to the CCRB resulted in a substantiated finding.  See Civilian Complaint Review Board, *28th Status Report on the General Operations of the New York City Civilian Complaint Review Board,* ¶ 18 (2008), http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf.    That Officer Sullivan had four charges substantiated is therefore significant.  The CCRB does not have the authority to directly impose discipline on police officers; once the CCRB substantiates allegations, the case is forwarded to the police commissioner for his consideration.   That the NYPD has not yet disciplined Officer Sullivan should not affect the admissibility of the CCRB's findings.   The incident that led to the claims took place only eighteen months ago.  The CCRB completed its investigation and forwarded the recommended charges to the NYPD only seven months ago.  See Memorandum to Police Commissioner from CCRB Executive Directior, dated December 19, 2007 (included in CCRB Case File)    The NYPD generally takes nearly a year to process CCRB cases following an adverse finding.  See Civilian Complaint Review Board, *26th Status Report on the General Operations of the New York City Civilian Complaint Review Board*, ¶45 (2007), http: //www.nyc.gov/html/ccrb/pdf/ccrbann2006.pdf.   As of July 7, 2008, the NYPD had not yet disposed of more than 67% of all cases that the CCRB closed with substantiated allegations in 2007.  Id. at Table 31A.

      None of the cases cited by the government as authority for precluding such cross-examination are persuasive.  In United States v. Cruz, 894 F.2d 41 (2d Cir. 1990), the Second Circuit affirmed the district court's exclusion of a sentencing transcript (and, apparently, cross-examination on that transcript) from an earlier case in another court in which a government informant had been found not credible.   Contrary to the government's contention, Cruz did not hold that a finding regarding the credibility of a witness in a particular proceeding is not relevant to whether that witness's testimony should be credited in a separate proceeding, Gov't Br. at 6-7; rather, Cruz upheld the district court's decision to preclude cross-examination on this subject on the ground that that decision was within [the court's] discretion."  Cruz, 894 F.2d at 43; see Nelson, 365 F.Supp.2d at 387.   United States v. Lawes, 292 F.3d 123 (2d Cir. 2002), has even less bearing on this issue.  It reiterates the clear principle that the decision whether to permit cross-examination is left to the discretion of the trial court, and then finds there was no abuse of discretion when the trial court barred cross-examination on a substantiated CCRB complaint regarding a government witness's use of excessive force against another person in an unrelated case. Id. at 131-32.  Excessive force is improper and illegal, but it is not lying, and it is a far cry from providing a false shield number and failing to file required police paperwork.  Finally, in United States v. Smith, also cited by the government, Judge Holwell found certain CCRB allegations to have only minimal probative value, but there is no information provided as to what those allegations were.  2007 WL 188734 (S.D.N.Y. Jan. 24, 2007).

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 9
Southern District of New York

   Re: **United States v. Jason Smith**
      **08 Cr. 84 (DC)**

   Denying Mr. Smith the ability to inquire into the credibility of one of the government's key witnesses against him would deny him a fair trial and a trial consistent with the Federal Rules of Evidence. For this reason, the Court should permit inquiry of Officer Sullivan into the prior substantiated CCRB findings.

### II. THE GOVERNMENT SHOULD BE PERMITTED TO CROSS-EXAMINE MR. SMITH ON ONLY ONE FELONY CONVICTION.

   The government puts forth no basis, either in logic or in law, for being allowed to cross-examine Mr. Smith on more than one conviction, let alone three felony convictions. Unlike the defendant in United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977), the case relied on by the government for the proposition that it is proper to use two prior convictions for the sale of narcotics to impeach a defendant, Mr. Smith will not, absent such impeachment, appear "pristine" to the jury, since the jury will know from the first moment of the trial that he has a prior felony. Moreover, Ortiz did *not* permit the use of multiple convictions for impeachment, but only of one prior narcotics conviction. Id. Indeed, none of the cases cited by the government in its motion permit the use of multiple narcotics convictions to impeach a defendant. Allowing the government to use multiple convictions would severely prejudice Mr. Smith before the jury. For all of the reasons set forth in the defense's motion in limine, the government should be permitted to cross-examine Mr. Smith as to the existence and name of only one felony conviction.

### III. THE DEFENSE MUST BE ALLOWED TO ARGUE THAT THE GOVERNMENT COULD – OR SHOULD – HAVE USED PARTICULAR INVESTIGATIVE TECHNIQUES.

   The government has moved to preclude the defense from suggesting in its opening, on cross-examination, or in summation that the police were "*required to use*" any particular techniques to investigate this case. See Gov't Br. at 12 (emphasis added). In the last line of its argument on this issue, however, the government makes a quite different point. Id. It argues that not only should the defense be prevented from arguing that any particular investigative technique was required, but that the defense should be "precluded from suggesting that the Government *should have*, for instance, conducted DNA testing on the gun when it was recovered." Id. (emphasis added). This means that the government is seeking to block the defense from raising any issue at all about what investigative techniques it employed (and not simply requesting that

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 10

  Re: <u>United States v. Jason Smith</u>  
     <u>08 Cr. 84 (DC)</u>

the defense not tell the jury that any particular technique was required).[1]

  The government has not established any justification for this extraordinary request, which would improperly hamper Mr. Smith's ability to present a defense by curtailing his capacity to argue lack of evidence as a basis for reasonable doubt. The preclusion that the government seeks, moreover, would abrogate long-standing practice in this district. In felon-in-possession cases, our office regularly has been allowed to draw the jury's attention to the absence of physical evidence – and the government's failure to pursue this evidence, or do so in a timely manner – in suggesting that the government has not proved its case beyond a reasonable doubt. <u>See, e.g.</u>, <u>United States v. Maldonado</u>, 08 Cr. 231 (JSR) (defense argued that the police's failure to pursue physical evidence, including fingerprint or DNA evidence, or do so in a timely manner, was significant as to whether the government had proved its case beyond a reasonable doubt); <u>United States v. Vashja</u>, 06 Cr. 338 (BSJ) (same); <u>United States v. Grayson</u>, 04 Cr. 1382 (RPP) (same); <u>United States v. Apodaca-Vasquez</u>, 04 Cr. 15 (DC) (same); <u>United States v. Jenkins</u>, 02 Cr. 1384 (RCC) (same). Indeed, pointing out the government's failure to pursue certain investigative techniques is a central function of the defense. <u>See, e.g.</u>, <u>United States v. Zapata</u>, 164 F.3d 620, * 7 (2d Cir. January 30, 1998) (upholding a jury charge and latitude given to defendants in summation that "permitted defendants to argue that by failing to use certain methods of investigation, the government had failed to establish the existence of a conspiracy and each defendant's participation in it"); <u>King v. Mantello</u>, 2002 WL 32100251, * 12 (E.D.N.Y. November 19, 2002) (noting on a habeas claim that defense counsel was not ineffective in part because he had called his "own forensics expert to underscore the significance of the police's failure to use available procedures in testing fingerprints and gun residue").

  The pattern jury instruction on investigative techniques expressly contemplates that the defense will present argument to the jury on the government's failure to utilize specific investigative techniques. The charge, which is regularly requested by the government in felon-in-possession cases, is as follows:

> During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques. (For example, no fingerprints were taken and no transmitting device was utilized during the defendant's alleged conversations with the agent.) You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However,

---

[1]  In a phone conversation on July 21, 2008, the defense clarified with the government that this was its intent.

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 11
Southern District of New York

    Re:    <u>United States v. Jason Smith</u>
                <u>08 Cr. 84 (DC)</u>

> you also are instructed that there is no legal requirement that the government use any of these specific investigative techniques to prove its case. (There is no requirement to attempt to take fingerprints, or that it offer fingerprints or tape recordings in evidence.) Law enforcement *techniques* are not your concern.
>
> Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

1 LEONARD B. SAND, *ET AL.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 4-4 (2008 ed.), at 4-27. Thus, the pattern jury instruction is directly contrary to the government's motion. The pattern instruction invites the jury to consider whether defense arguments on investigative techniques raise an issue of reasonable doubt.

      Not surprisingly, the primary case cited in the government's brief also does not support its position. In <u>United States v. Bautista</u>, 252 F.3d 141 (2d Cir. 2001), the Second Circuit specifically emphasized that "[t]he absence of evidence in a criminal case is a valid basis for reasonable doubt." <u>Id.</u> at 145. In so doing, the Court observed, "[i]n every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence and the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit." <u>Id.</u> (quoting <u>United States v. Poindexter</u>, 942 F.2d 354, 359 (9th Cir. 1991)). Although the Second Circuit in <u>Bautista</u> did affirm the district court's decision to restrict defense counsel's summation, the reason for that restriction was that defense counsel had made factual assertions – for which there was no basis in the record – that certain things (such as cell records and beeper records) not only were not offered into evidence, but in fact did not exist. <u>Id.</u> Thus, the defense attorney in <u>Bautista</u> was doing more than drawing the jury's attention to the government's failure to pursue this kind of evidence, she was telling the jury that this particular evidence could not have been recovered, even if the government had tried.

      The defense has no intention of pursuing this strategy in Mr. Smith's case. Using the government's example of DNA evidence, the parallel to <u>Bautista</u> would be if the defense told the jury that not only did the government not pursue DNA evidence, but that if testing had been done, the government would not have found any DNA evidence linking the gun to Mr. Smith. The defense has no intention of taking this second step.

      In other cases, the Second Circuit has likewise emphasized that the jury should be told to "base its decision on the evidence *or lack of evidence* that was presented at trial." <u>See, e.g.</u>, <u>United States v. Saldarriaga</u>, 204 F.3d 50, 52 (2d Cir. 2000) (emphasis added). In <u>Saldarriaga</u>,

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 12
Southern District of New York

  Re: **United States v. Jason Smith**
     **08 Cr. 84 (DC)**

also cited by the government, the Second Circuit upheld a jury charge in which the court indicated that the government had no obligation to use any particular techniques, but then went on to instruct the jury as follows:

> However, if suggesting things that they could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that happens, why, then, of course that is a reasonable doubt like anything else.

Id. Thus, Saldarriaga (like Bautista) does not support the government's broad-based and unusual request in this case. Id.

Accordingly, while the government might be entitled to a jury instruction making clear that the police are not *required* to use any particular investigative technique, the defense should be allowed to present argument on the government's failure to pursue certain types of physical evidence, including DNA evidence. Under the applicable case law, drawing the jury's attention to the lack of evidence in a case is a normal and appropriate function of the defense.

**IV. THE DEFENSE SHOULD BE FREE TO RAISE ISSUES CONCERNING THE JANUARY 5, 2008, STOP OF MR. SMITH AS WELL AS ANY PRIOR STOPS OR ARRESTS.**

The government has moved to preclude the defense from questioning the police officers about the propriety of the January 5, 2008, stop of Mr. Smith and arguing in either opening or closing that the stop or arrest was improper. See Gov't Br. at 13. The government has also asked the Court to preclude the defense from "discussing any stops, arrests, or litigation other than the January 5, 2008 arrest." Id. at 15.

The defense does not intend to argue to the jury that the police officers violated the law by stopping and arresting Mr. Smith on January 5, 2008. The defense must be free to inquire into the circumstances of the stop and arrest, however, because the officers' testimony about the stop and arrest could be relevant to whether Mr. Smith actually possessed the gun or marijuana as charged. Because the officers have all declined to speak to the defense, we have not been afforded any opportunity to question them about these matters. Nevertheless, certain facts about the stop and arrest might shed doubt on the officers' credibility or their testimony that the gun and/or marijuana belonged to Mr. Smith. Under these circumstances, precluding defense questioning about the facts of the stop and arrest would violate Mr. Smith's constitutional right to put on a defense. See, e.g., United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992) ("The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth

Honorable Denny Chin                                              July 23, 2008
United States District Judge                                      Page 13
Southern District of New York

      **Re:**    <u>**United States v. Jason Smith**</u>
               <u>**08 Cr. 84 (DC)**</u>

Amendment guarantee each criminal defendant the right to present a defense."). "The right to present a defense is one of the minimum essentials of a fair trial." <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 934 (2d Cir. 1998) (internal citations omitted).

      Similarly, the defense should not be precluded from raising prior stops or arrests by Mr. Smith by officers of the 48th precinct or from discussing any litigation concerning those interactions. Clearly, if the officers involved in this arrest had prior experiences with Mr. Smith or were actively out looking for him that night, this could affect how the jury views the officers' testimony that Mr. Smith had a gun and/or marijuana. Preventing the defense from raising this issue would again violate Mr. Smith's constitutional right to put on a defense to the charges against him.

## V. DEFENSE EXHIBITS

      The government moves to preclude the defense from offering (hypothetical) "computer animation simulations." Of course, any blanket rule of preclusion of such demonstrative evidence would be contrary to the Rules of Evidence; this request should therefore be denied. In the alternative, the government asks that the defendant be required to show that there is a "substantial similarity" between any such model and the scene it depicts. The defense has not yet decided what demonstrative exhibits it will use at trial, but the Court can be certain any such exhibits will be fair representations and will help the jury understand some fact of consequence to the case, in accordance with Federal Rules of Evidence 901, 401, and 403. The defense will disclose to the government any items it intends to use in its case-in-chief at trial, as soon as it has decided what those will be, in accordance with Federal Rule of Criminal Procedure 16(b)(1)(A); there is, of course, no requirement that the defense disclose exhibits it intends to use on cross-examination. However, if the defense manages to come up with any demonstrative evidence so sensational that it might render the jury "unable to visualize an opposing viewpoint of the events," as the government fears, Gov't Br. at 13, the defense certainly will preview such evidence for the Court in advance of offering it.

                                                                                       Respectfully submitted,

                                                                                       Fiona M. Doherty
                                                                                       Deirdre D. von Dornum
                                                                                       Attorneys for Jason Smith
                                                                                       (212) 417-8734/(718) 330-1208

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 14
Southern District of New York

    **Re:**    <u>**United States v. Jason Smith**</u>
              <u>**08 Cr. 84 (DC)**</u>

cc:    Assistant U.S. Attorney Amie N. Ely (via ECF)

       Jason Smith, MCC, Reg. No. 60717-054 (via U.S. Mail)