UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

UNITED STATES OF AMERICA         :         08 CR. 84 (DC)

   - v. -                                            :

JASON SMITH,                              :

             Defendant.      :

------------------------------------------------X


**DEFENDANT JASON SMITH'S SUPPLEMENTAL MOTION *IN LIMINE*
TO PRECLUDE THE GOVERNMENT FROM PLAYING
CERTAIN EXCERPTS OF PRISON CALLS IN ISOLATION**


                                        LEONARD F. JOY, ESQ.
                                        Federal Defenders of New York
                                        Attorney for Defendant
                                        **JASON SMITH**
                                        52 Duane Street - 10th Floor
                                        New York, New York 10007
                                        Tel.: (212) 417-8767


                                        **FIONA M. DOHERTY**
                                        **DEIRDRE D. VON DORNUM**

                                        <u>Of Counsel</u>


TO:   **MICHAEL J. GARCIA, ESQ**.
        United States Attorney
        Southern District of New York
        One. St. Andrew's Plaza
        New York, New York 10007
        Attn: **AMIE N. ELY, ESQ.**
            Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

July 23, 2008

**BY HAND AND ECF**

Honorable Denny Chin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1020
New York, New York 10007

  Re: **United States v. Jason Smith**
     **08 Cr. 84 (DC)**

Dear Judge Chin:

  The defense respectfully submits this supplemental motion *in limine* in advance of trial, scheduled for August 4, 2008. This motion concerns the government's desire to play six excerpts from Mr. Smith's Metropolitan Correctional Center ("MCC") prison calls over the objection of the defense. In this motion, the defense respectfully asks that the Court: (1) preclude the government from playing in isolation a three-second excerpt of one of Mr. Smith's prison calls, dated February 3, 2008, under the "Rule of Completeness" and the Fifth Amendment to the United States Constitution; (2) preclude the government from playing a four-second excerpt of another prison call, dated January 31, 2008, under the "Rule of Completeness" and Rule 403 of the Federal Rules of Evidence; and (3) preclude the government from playing four separate equally isolated excerpts of prison calls – dated February 6, 2008, April 27, 2008, May 4, 2008, and May 10, 2008 – under the Fifth Amendment and Rules 401 to 403 of the Federal Rules of Evidence.

  As Your Honor is aware, we received an extension on the submission of this motion, because the defense and the government were attempting to come to an agreement on the eight prison call excerpts that the government is seeking to play at trial. Although the parties have come to an agreement regarding two of these excerpts, the remaining six excerpts remain in dispute.

FACTUAL BACKGROUND

I.  Introduction

  On July 16, 2008, the government provided us with notice that it intends to play a number of excerpts of Mr. Smith's prison calls in its case-in-chief at trial. (A copy of the government's

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 2

    Re:   **United States v. Jason Smith**  
            **08 Cr. 84 (DC)**

notice is attached as Exhibit A. A CD copy of the recordings is attached as Exhibit B.). With respect to two of these excerpts, the government has agreed, at the request of the defense, to play a slightly longer piece of the call to establish the context for Mr. Smith's remarks. The agreement with respect to those two excerpts is as follows:

(1)    The government notified the defense that it intends to play a three-second segment (8:17- 8:20) of a call that took place on January 31, 2008 at 19:19:24 P.M. ("Call 1") At the request of the defense, the government will instead play a longer excerpt of the call from 8:07-8:22.

(2)    The government notified the defense that it intends to play a 16-second segment (14:52-15:08) of a call that took place on January 31, 2008 at 22:01:38 P.M. ("Call 2") At the request of the defense, the government will instead play a longer excerpt of the call from 14:50-15:10.

## II.    Disputed Calls[1]

### A.    January 31, 2008 Call, 19:19:24 P.M. (11:06-11:10)

The government seeks to introduce a four-second segment of an approximately 16-minute call between Mr. Smith and a friend on January 31, 2008 at 19:19:24 P.M. ("Call 1"). The excerpt that the government intends to play is between 11:06 and 11:10 on the recording. During this excerpt, Mr. Smith makes the following remark to his friend: "There are terrorists in this building and you're talking about, nigger, me with a gun? Get the fuck out of here." See Call 1 at 11:06-11:10.

Immediately before this excerpt, Mr. Smith was talking to his friend about his experiences in the Special Housing Unit (the "box") at MCC after his arrest, how hard it was for him to get in touch with people, and asking his friend to help get him in contact with his son. See id. at 9:42-10:47. He told his friend that everything at the prison "is slow motion, they don't do nothing. Yo nigger, I was in the box, spazzing out, nigger." See id. at 10:48-10:53. He then said, "they were like, yo, what's wrong with you, nigger? Get me the fuck out of here, I didn't do nothing. Get me the fuck out of here. Why do you all got me in the box? And you know it was, ah, you just came in new, we don't know who, we gotta see how you act . . . ah - a - ah - a. You got terrorists in this building and you're talking about, nigger, me with a gun? Get the fuck out

---

    [1]    The transcriptions in this fact section are based on the defense's best efforts to interpret the prison calls within a short time-frame.

Honorable Denny Chin  July 23, 2008
United States District Judge  Page 3
Southern District of New York

> Re: **United States v. Jason Smith**
> **08 Cr. 84 (DC)**

of here." See id. at 10:53-11:10. Mr. Smith then continues talking with his friend about how "crazy" the situation was. See id. at 11:10-11:25.

### B.  February 3, 2008, 20:29:32 P.M. (3:12-3:15)

The government seeks to introduce a three-second excerpt of a 13-minute call, dated February 3, 2008 ("Call 3"). This call is between Mr. Smith and his mother. The three seconds that the government wishes to play falls between 3:12 and 3:15 on the tape. In this excerpt, Mr. Smith said, "I got caught with a gun." See Call 3 at 3:12-3:15. Immediately before this comment, Mr. Smith, who is obviously distraught, told his mother. "Ma, they gonna put me away for a long time, ma." See id. at 3:06-3:10. He then said, "Ma, I got three felonies, and I got caught with a gun." See id. at 3:10-3:15. It is the second half of this sentence that the government intends to play.

Immediately after this remark, Mr. Smith went on to explain that because this is a federal case, he could be sent anywhere in the United States to serve his sentence. See id. at 3:15-3:30. He explained that he could get 15 years, and says, "I'm never going to see you again, ma." See id. at 3:30-3:40. He told his mother that he might be sent to places as far away as Virginia, Arizona, Missouri, Detroit, or anywhere across the United States. See id. at 3:42-3:55. His mother responded that she did not think he would be sent that far, as her brother was sent to Attica and he "killed somebody." See id. at 3:55-4:08. Mr. Smith then explained that her brother's case was a New York case and that his case is federal, which means he could be sent anywhere, including Pennsylvania, California, Minnesota, North Carolina, or Florida. See id. at 4:08-4:54. Still very upset, near tears, he said that they could send him anywhere in the United States for 15 years and "I'm never going to see you again, ma." See id. at 4:54-5:00. His mother replied that she could come see him if they put him in Pennsylvania. See id. at 5:00-5:17. Mr. Smith asked his mother to call his father and see if his father could get him a lawyer. See id. at 5:18-5:21. After a brief conversation about this, he said, "They're gonna wanna tear my life out, ma." They're gonna wanna send me away forever." See id. at 5:29-5:35.

Mr. Smith's mother then again remarked that her brother's sentence was for killing somebody. See id. at 5:35-5:40. Mr. Smith responded: "I only got a gun, ma, but with the three felonies and the new law they got out." See 5:40-5:46. "And I didn't even have the gun on me, ma." See id. at 5:47-5:51. His mother then asked, "They didn't see you with it?" See id. at 5:52-53. Mr. Smith responded, "Nah, the police was lying. They found it under a car, and they

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 4

Re: **United States v. Jason Smith**  
**08 Cr. 84 (DC)**

saying that it's mine. He didn't see me with it, he didn't see it on me, he didn't catch it on me. It was underneath a car. Y están diciendo que es mio.[2]" See id. at 5:53-6:08.

The defense has not objected to the government playing its three-second excerpt: "I got caught with a gun." Instead, we have asked that if the government plays this excerpt, then it also play the remarks that Mr. Smith made a couple of minutes later in the same conversation. Specifically, the defense requested that the government also play 5:48-6:10 on the tape. The government has indicated that it will not accede to this request.

C.    February 6, 2008, 22:10:44 P.M. (6:45-7:07)

The government seeks to introduce a 22-second excerpt of a nearly 16-minute phone call between Mr. Smith and his girlfriend, Quasheeba Campbell, on February 6, 2008 at 10:10 p.m. ("Call 4"). The government's excerpt occurs between 6:45 and 7:07 on the recording. During this segment of the tape, the following exchange takes place:

Mr. Smith: "I made fucked-up decisions, ma."  
Ms. Campbell: "I know but everybody does from time to time, it's ok."  
Mr. Smith: "But, I'm gonna be paying for the rest of my life for this one."  
Ms. Campbell: "You are not. How you gonna say that?"  
Mr. Smith: "It gonna take nothing short of a miracle, god, divine intervention."

Call 4 at 6:45-7:07.

The conversation between Mr. Smith and his girlfriend began with Mr. Smith talking about how nervous he was and how he hopes that after his next court date, he will be allowed to go back to the state. See id. at 0:56-1:07. He told his girlfriend that he was scared and did not want to lose everything he had. See id. at 1:25-1:33. He remarked that he had three felonies and that "these niggers are not playing fair" and that he was just trying to be realistic about the situation. See id. at 1:36-1:55. He then talked about how hard it has been for him to be cut off from his family. See id. at 1:55-2:55. He emphasized that he does not want to hurt his girlfriend, and they talk about what they will do if he has to go away for a long time. See id. at 2:55-5:33.

Then, immediately preceding the exchange the government wants to play, Mr. Smith and his girlfriend discussed how they had both made bad decisions by arguing with one another before Mr. Smith was arrested. See id. at 5:33-5:51. Mr. Smith then lamented that it was "just

---

[2]    This last Spanish phrase translates to "and they're saying that it's mine."

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 5

  Re: **United States v. Jason Smith**  
     **08 Cr. 84 (DC)**

not meant for [him] to be happy." See id. at 5:51-5:55. His girlfriend responded by telling Mr. Smith that it was not that he was not meant to be happy, but that he has done things to himself by being hard-headed. See id. at 5:55-6:18. Mr. Smith said that his girlfriend is just as hard-headed. See id. at 6:18-6:25. His girlfriend agreed with this, but responded that she knows how to make decisions that do not harm her. See id. at 6:25-6:45. Then, Mr. Smith and his girlfriend engaged in the exchange that the government wishes to play. See id. at 6:45-7:07. After this exchange, Mr. Smith and his girlfriend talked about their desire to go to church together after Mr. Smith is released. See id. at 7:08-7:30.

  D. April 27, 2008, 13:12:11 P.M. (13:13-13:22)

  The government seeks to introduce a nine-second excerpt of an approximately 15-minute call between Mr. Smith and his girlfriend on April 27, 2008 at 1:12 P.M. ("Call 5"). The excerpt that the government wishes to play occurs between 13:13 and 13:22. During this segment, Mr. Smith says, "It's alright. It's the penance I pay for being disobedient and doing what I want to do." Id. at 13:13-13:22. Right before this, he had said "I'm gonna miss the holidays." Id. at 13:10-13:13." It appears that the government is not seeking to play this sentence.

  Mr. Smith made these statements immediately after explaining that the next court date in his federal case would be in 90 days. See id. at 12:44-12:47. When his girlfriend asks him about coming home, he says that he still has to serve out his five months in state prison for his parole violation. See id. at 12:47-13:00. Mr. Smith tells his girlfriend that this time would pass quickly because the state has much more lenient visiting hours, but then noted that he would miss the holidays. See id. at 13:00-13:13. Then comes the excerpt that the government desires to play. Id. at 13:13-13:22.

  E. May 4, 2008, 19:01:26 P.M. (3:00-3:07)

  The government seeks to introduce a seven-second excerpt of an approximately four-minute call between Mr. Smith and his mother on May 4, 2008 at 7:01 P.M. ("Call 6"). Mr. Smith and his mother began the call by talking about Mr. Smith's relationship with his father. Mr. Smith's mother had indicated that his father was offended by something Mr. Smith had written in a letter. See Call 6 at 0:44-56. Mr. Smith responded by stating that he was not going to argue about the matter and saying, "I don't got nobody as it is. I don't need nobody. I get myself into these situations. I deal with it by myself you know what I mean . . ." See id. at 1:16-1:23. Mr. Smith then talked about the fact that no one had come to see him in jail, not even his mother, despite the fact that he had been helping her financially. See id. at 1:47-2:45. He told his mother that he had told his father the truth and remarked, "and when I tell the truth everybody

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 6

    Re:    **United States v. Jason Smith**  
            **08 Cr. 84 (DC)**

get mad. Everybody all, 'Forget him he's just mad 'cause he's locked up.' Nah, I'm not mad 'cause I'm locked up. I put myself in this situation. I get myself out this situation." See id. at 2:54-3:07. The government wishes to play only the last portion of these remarks (between 3:00 and 3:07) in which Mr. Smith said, "I'm not mad 'cause I'm locked up. I put myself in this situation."

    F.    **May 10, 2008, 21:46:52 P.M. (4:23-4:27)**

The government seeks to introduce a four-second excerpt of an approximately 16-minute call between Mr. Smith and his father on May 10, 2008 at 9:46 P.M. ("Call 7"). The excerpt that the government wishes to play occurs between 4:23 and 4:27 on the recording. After some introductory remarks, Mr. Smith and his father began the call by talking about a letter Mr. Smith had sent to his father. Mr. Smith related that his mother had told him that his father was upset by this letter, but his father indicated that this was not true. See Call 7 at 1:25-3:30. Following this, Mr. Smith talked to his father about the conditions at the prison and explained that he was required to pay for everything in federal custody (such as calls, stamps, and clothes), unlike in state prison. See id. at 3:30-4:12. His father responded, "When Mr. Bush sends me some of that rebate, I'll send you . . . you know . . . a couple of dollars. Maybe 30 or . . . ." See id. at 4:12-4:20. Mr. Smith replied to this offer by saying, "Nah its alright, Dad . . . keep your money, Dad. I'm good. I put myself in this situation. I'm gonna stand by it. You know, I didn't even ask my moms to come see me. I needed to talk some legal stuff with her on a visit." See id. at 4:20-4:33. From these remarks, the government seeks to play only the middle portion for the jury: "Dad, I'm good. I put myself in this situation. I'm going to stand by it." See id. at 4:23-4:27.

After these remarks, Mr. Smith complained to his father that his mother had not visited him in jail, despite all he had done to help support her financially. See id. at 4:33-5:03. He told his father that he doesn't like Mother's Day anymore. See id. at 5:08-5:10. Then, Mr. Smith and his father engaged in an extended discussion about Mr. Smith's son. See id. at 5:24-7:20. The conversation went on from there.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 7

Re: **United States v. Jason Smith**  
**08 Cr. 84 (DC)**

ARGUMENT

I.   ALLOWING THE GOVERNMENT TO SELECTIVELY PLAY ONLY A THREE-SECOND EXCERPT OF THE FEBRUARY 3, 2008 CALL WOULD VIOLATE THE RULE OF COMPLETENESS AND THE FIFTH AMENDMENT.

A.   **Applicable Legal Standards**

The common-law "rule of completeness," which underlies Federal Rule of Evidence 106, was designed to prevent one party from selectively excerpting statements offered against its opponent in order to present a distorted impression of the statements to the trier of fact. See Beech Aircraft Corporation v. Rainey, 488 U.S. 153, 170-71 (1988). As noted by the Supreme Court, the rule of completeness has been summarized "succinctly by Wigmore":

> [The] opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance.

Id. at 171 (quoting 7 J. Wigmore, Evidence in Trials at Common Law § 2113, p. 653 (J. Chadbourn rev. 1978).

The Federal Rules of Evidence have codified this aspect of the common-law "rule of completeness." Under Rule 106:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

F.R.Evid. 106.[3] According to this rule, "the omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Castro, 813 F.2d 571, 576 (2d Cir. 1987). The purpose of the rule is to ensure that the testimony "should at least represent the tenor of the utterance as a whole, and not mere

---

[3]   Under Rule 106, "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402." Beech Aircraft, 488 U.S. at 172.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 8

    Re:    **United States v. Jason Smith**  
            **08 Cr. 84 (DC)**

fragments of it." Id. (citations omitted); see also United States v. Paladino, 401 F.3d 471, 476 (7th Cir. 2005) (holding that the district court's decision to allow the government to make misleading deletions from a defendant's deposition testimony violated Rule 106).

    The Second Circuit has emphasized that Federal Rule of Evidence 611(a) likewise empowers and obligates district courts to take account of the considerations of fairness underlying the rule of completeness. See Castro, 813 F.2d at 576. In relevant part, Rule 611(a) instructs the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth . . ." F.R.Evid. 611(a). This rule "restates in broad terms the power and obligation of the judge as developed under common law principles." Id. (citations omitted). Thus, the Second Circuit has noted:

> [W]hether we operate under Rule 106's embodiment of the rule of completeness, or under the more general provision of Rule 611(a), we remain guided by the overarching principle that it is the trial court's responsibility to exercise common sense and a sense of fairness to protect the rights of the parties while remaining ever mindful of the court's obligation to protect the interest of society in the "ascertainment of the truth."

Id.

    In a criminal case, the rule of completeness also raises issues of constitutional dimension. The Court should consider the defendant's Fifth Amendment rights when the government seeks to introduce an excerpt of a defendant's statement to prove the truth of the matter asserted. In United States v. Marin, 669 F.2d 73 (2d Cir. 1982), although this issue was not squarely before the Court, the Second Circuit observed that "when the government offers in evidence a defendant's confession and in confessing the defendant has also made exculpatory statements that the government seeks to omit, the defendant's Fifth Amendment rights may be implicated." Id. at 85, n. 6. The Court went on to note that the Seventh Circuit has found that "the Fifth Amendment right to remain silent is violated when the omission "paint(s) a distorted picture . . . which (the defendant is) powerless to remedy without taking the stand" and results in "substantial" prejudice to the defendant. Id. (quoting United States v. Walker, 652 F.2d 708, 713-714 (7th Cir. 1981).

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 9

    Re:    <u>United States v. Jason Smith</u>  
           08 Cr. 84 (DC)

    **B.**    **When Considered in Context, the Government's Excerpt of the February 3, 2008 Call is Prejudicial and Misleading.**

The defense has objected to the government playing in isolation a three-second excerpt of an approximately 13-minute call, dated February 3, 2008, between Mr. Smith and his mother. In this excerpt, Mr. Smith says, "I got caught with a gun." <u>See</u> 3:12-3:15. This phrase is the second half of a sentence, in which Mr. Smith says, "Ma, I got three felonies, and I got caught with a gun." <u>See</u> 3:10-3:15. The government has indicated that it is only seeking to introduce for the jury the second part of this sentence.

Allowing the government to play this highly selective excerpt would be improper, because the quoted phrase is both misleading and prejudicial. In seeking to play just these six words, the government clearly wants the jury to believe that Mr. Smith is confessing on tape to having possessed a gun on January 5, 2008. When the tone and surrounding context of these words are considered, however, the defense believes that Mr. Smith is telling his mother that he has been charged with a gun – not that he physically possessed a gun that night. The surrounding context is all about the repercussions of the charge against him. Immediately before the phrase at issue, for example, Mr. Smith tells his mother. "Ma, they gonna put me away for a long time, ma." <u>See</u> 3:06-3:10. Following the statement, Mr. Smith and his mother engage in an extended conversation in which he expresses despair that he will be sent to prison for 15 years, that the Bureau of Prisons will send him far away across the country, and that he will never see her again. He asks his mother to talk to his father to help find him a lawyer.

Immediately thereafter, Mr. Smith's mother refers to the fact that her brother killed somebody (and was still allowed to do his time in New York). This prompted Mr. Smith to again refer to the charge against him and the possible sentencing repercussions: "I only got a gun, ma, but with the three felonies and the new law they got out." <u>See</u> 5:40-5:46. He then immediately emphasizes to his mother, "And I didn't even have the gun on me, ma." <u>See</u> 5:47-5:51. His mother then asks, "They didn't see you with it?" <u>See</u> 5:52-53. Mr. Smith responds, "Nah, the police was lying. They found it under a car, and they saying that it's mine. He didn't see me with it, he didn't see it on him, he didn't catch it on me. It was underneath a car. Y están diciendo que es mio." <u>See</u> 5:53-6:08.

    **C.**    **The Government Should Be Required to Play Mr. Smith's Later Clarifying Remarks from the Same Conversation.**

These later remarks in the same conversation – and the tone in which they are conveyed – are necessary to give the jury a complete understanding of the six words ("I got caught with a

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 10

Re: **United States v. Jason Smith**  
**08 Cr. 84 (DC)**

gun") that the government seeks to play. These later remarks – in which Mr. Smith says he did not have the gun on him, they did not catch him with the gun, and that the police are lying – help to clarify that Mr. Smith was talking (just a couple of minutes earlier) about having been charged with a gun. This later portion is essential to placing the government's three-second excerpt in context and to preventing the jury from being misled. See Castro, 813 F.2d at 576. Without hearing the later portion of Mr. Smith's statement, the jury will not be afforded the opportunity to make a "fair and impartial" determination of what Mr. Smith actually meant. Id.

Thus, if the government is allowed to play its chosen excerpt, the defense seeks to admit a later clarifying portion of the call from 5:48-6:10. This portion goes directly to the issue at hand (the meaning of the government's excerpt), but does not include any discussion of the 15-year sentence that Mr. Smith is facing. The government has separately moved *in limine* to preclude the defense from informing the jury that Mr. Smith is facing a long sentence. See July 17, 2008 Gov't Br. at 12-13. The short section that the defense seeks to introduce comes after (but does not include) the exchange between Mr. Smith and his mother about the possible sentence that he faces.

Playing this additional portion of the call would satisfy the requirements of Rule 106 and 611(a). See Fed.R.Evid. 106 & 611(a). In Beech Aircraft, for example, the Supreme Court noted that the rule of completeness, underlying F.R.Evid. 106, was meant to prevent exactly the kind of prejudice that would otherwise accrue in this case. See 488 U.S. at 171. In that case, the position of the plaintiff (Mr. Rainey) at trial had been that an aircraft accident involving his wife had been caused by a power failure. Id. at 170. The Court permitted the defendants to inform the jury of a portion of a letter by Mr. Rainey, however, discussing other problems that his wife had experienced on the morning of the accident. Id. at 170-71. Although Mr. Rainey's letter went on to discuss and develop his theory of power failure, the trial court did not allow Mr. Rainey's counsel to question him about this part of the letter. Id. In reviewing the court's decision, the Supreme Court found that the court had erred in refusing to permit Mr. Rainey to present a "more complete picture" of what was written in the letter:

> It is plausible that a jury would have concluded from this information that Rainey did not believe in his theory of power failure and had developed it only later for purposes of litigation. Because the court sustained defense counsel's objection, Rainey's counsel was unable to counteract this prejudicial impression by presenting additional information about the letter on cross-examination.

Id. at 170-71.

Re: **United States v. Jason Smith**  
08 Cr. 84 (DC)

In <u>United States v. Gotti</u>, 457 F.Supp.2d 395 (S.D.N.Y. 2006), Judge Scheindlin held that even a separate recorded conversation, which shed light on the meaning of statements the government sought to introduce against the defendant, was admissible under Rule 106. <u>Id.</u> at 399. In <u>Gotti</u>, the government charged the defendant with witness tampering based in part on his meeting with the son of a cooperating witness, Michael DiLeonardo. <u>Id.</u> at 398. In support of this charge, the government sought to introduce portions of three recordings (Sessions 19, 49, and 54) in which Mr. Gotti discussed plans to meet with Mr. DiLeonardo's son. <u>Id.</u> The defense did not object to the admission of the statements, but sought to introduce a portion of another recording (Session 20), in which one of Mr. Gotti's associates informed him that Mr. DiLeonardo had said, "first call my wife and see if she's okay." <u>Id.</u> The defense argued, over the government's objection, that this segment suggested that Mr. Gotti had permission from Mr. DiLeonardo for the meeting and was therefore admissible under the rule of completeness. <u>Id.</u> at 398-99. Judge Scheindlin determined that the "disputed statement goes to Gotti's subjective understanding of DiLeonardo's attitude, an issue that is relevant to whether or not Gotti intended to engage in witness tampering." <u>Id.</u> at 399. She also emphasized that "Rule 106 does not allow the Government to cherry pick the statements it wants to admit on the issue of Gotti's meeting with DiLeonardo's son and create a skewed picture of the facts." <u>Id.</u> For the same reason, the government should not be able to cherry pick between statements in the very same conversation and mislead the jury here.

Failing to play the later portion of the recording, moreover, would violate Mr. Smith's Fifth Amendment rights. <u>See</u> <u>Marin</u>, 669 F.2d at 85, n.6. Without these clarifying remarks, Mr. Smith would be forced on the stand to explain what he actually meant in the excerpt that the government wishes to play. If he did not take the stand, he would allow the government to present a distorted picture of the excerpt and risk the jury viewing it as a confession. Indeed, there could be no other reason for the government to play these six words at trial.

II. THE GOVERNMENT SHOULD BE PRECLUDED FROM PLAYING THE FOUR-SECOND EXCERPT OF THE JANUARY 31, 2008 CALL.

The government wants to introduce a four-second segment of an approximately 16-minute call between Mr. Smith and a friend on January 31, 2008 at 19:19:24 P.M. ("Call 1"). The context for this excerpt is that Mr. Smith was talking to his friend about his experiences in the box at MCC after his arrest, how hard it was for him to get in touch with people, and asking his friend to help get him in contact with his son. <u>See</u> Call 1 at 9:42-10:47. He told his friend that everything at the prison "is slow motion, they don't do nothing. Yo nigger, I was in the box, spazzing out, nigger." <u>See</u> <u>id.</u> at 10:48-10:53. He then said, "they were like, yo, what's wrong with you, nigger? Get me the fuck out of here, I didn't do nothing. Get me the fuck out of here.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 12

    Re:    **United States v. Jason Smith**  
            **08 Cr. 84 (DC)**

Why do you all got me in the box? And you know it was, ah, you just came in new, we don't know who, we gotta see how you act . . . ah - a - ah - a. You got terrorists in this building and you're talking about, nigger, me with a gun? Get the fuck out of here." See id. at 10:53-11:10. Mr. Smith then continued talking with his friend about how "crazy" the situation was. See id. at 11:10-11:25.

    From this portion of the call, the government believes it should be allowed to select out only the following four-second excerpt for the jury: "There are terrorists in this building and you're talking about, nigger, me with a gun? Get the fuck out of here." See id. at 11:06-11:10. The government would play this excerpt by itself without providing any of the surrounding context for the jury. Allowing the government to play this segment in isolation, however, would mislead the jury into thinking that Mr. Smith was confessing to having the gun – and suggesting, moreover, that having a gun is not a very serious thing in relation to the "terrorists" who are housed at the MCC.

    When Mr. Smith's remarks are heard in context, it becomes obvious that he is recounting his experiences in the Special Housing Unit (the "SHU"), where all inmates are placed during the initial processing period at the MCC.[4] Mr. Smith could not understand why he was being held in the SHU. During the call, he recreated for his friend the conversations he had with the prison guards while he was being held there. He desperately wanted out and told the guards that he "didn't do nothing." They responded that they would have to wait to see how he does at the MCC, but he could not understand this. In the remarks that the government wishes to play, we submit that Mr. Smith meant that although other people at the MCC were being charged as terrorists, he was only being charged with having a gun – and yet he was the one in SHU. He believed that he was being unfairly singled out.

    Once this context is considered, it is clear that allowing the government to selectively play its excerpt would be highly inappropriate. The jury, upon hearing this excerpt, could not help but think that Mr. Smith's remarks were a kind of confession. Indeed, the government would have no reason to play the excerpt unless it was actively trying to convey this impression to the jury. When the excerpt is played in context, however, the words are not nearly so inculpatory as the government would have the jury believe.

    Unfortunately, however, the surrounding context cannot be played for this call, because allowing the jury to hear the associated conversation would be highly prejudicial to Mr. Smith. If members of the jury hear that Mr. Smith was in the "box," they are naturally going to assume that

---

    4    This would be obvious only to people who are familiar with the MCC's system.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 13

Re:   **United States v. Jason Smith**  
       **08 Cr. 84 (DC)**

he did something wrong, no matter what they might be instructed on this matter. Indeed, Mr. Smith seemed himself to believe that he was being punished for something when he "didn't do nothing" and was not facing the same kind of charges as others at the MCC.

The surrounding conversation is also prejudicial in other respects. The bad language used, particularly the word "nigger," could inflame the jury against Mr. Smith, even though his use of the word has nothing to do with the charges against him. The references to terrorists might also unfairly prejudice members of the jury. Some jurors, for example, might be offended that Mr. Smith blithely characterized fellow-inmates as terrorists. Others might think that the case somehow did involve something as serious as terrorism, given that Mr. Smith was complaining of being held for an extended period in the SHU. This is, of course, assuming that they are able to decipher the conversation at all, as the exchange between Mr. Smith and his friend has the great potential to totally confuse the jury about what exactly is being said and why it is being offered.

For all of these reasons, the Court should preclude the government from playing this excerpt for the jury. When played in context, as required under Rules 106 and 611(a) of the Federal Rules of Evidence, the excerpt has little probative value, as it is not the confession that the government would like to have the jury believe. See Section I.A. Playing the surrounding context, however, would be highly prejudicial to Mr. Smith and confusing for the jury. Thus, the call should be excluded in its entirety under Rule 403 of the Federal Rules of Evidence. See Fed.R.Evid. 403 (providing that evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury").

III.   THE REMAINING FOUR EXCERPTS SHOULD ALL BE EXCLUDED.

In relation to the last four calls, the government is seeking to play short snippets of extended conversations between Mr. Smith and his girlfriend, mother, and father. The defense strongly believes that playing any of these four excerpts would be entirely inappropriate. All four excerpts are of highly ambiguous statements that are not inculpatory in context, but could be made to seem probative and inculpatory if they are pulled out and played selectively for the jury as if they were directly related to the charges against Mr. Smith in this case. All four excerpts should be excluded as irrelevant under Rules 401 and 402 of the Federal Rules of Evidence. See Fed.R.Evid. 401 & 402 (evidence is not admissible when it does not have the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable"). The excerpts should also be excluded under Rule 403 as more prejudicial than probative, because of the likelihood that they will mislead and confuse the jury. See Fed.R.Evid. 403.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 14

 **Re:** **United States v. Jason Smith**  
    **08 Cr. 84 (DC)**

The substance of the government's remaining four excerpts are as follows:

(1) Mr. Smith: "I made fucked-up decisions, ma."  
   Ms. Campbell: "I know but everybody does from time to time, it's ok."  
   Mr. Smith: "But, I'm gonna be paying for the rest of my life for this one."  
   Ms. Campbell: "You are not. How you gonna say that?"  
   Mr. Smith: "It gonna take nothing short of a miracle, god, divine intervention."

   Call 4, February 6, 2008, at 6:45-7:07.

(2) "It's alright. It's the penance I pay for being disobedient and doing what I want to do." Call 5, April 27, 2008, at 13:13-13:22.

(3) "I'm not mad 'cause I'm locked up. I put myself in this situation." Call 6, May 4, 2008, at 3:00-3:07.

(4) "Dad, I'm good. I put myself in this situation. I'm going to stand by it." See Call 7, May 10, 2008, at 4:23-4:27.

  When heard in context, all four of these excerpts are extremely general statements of depression and despair. In Call 4, just before the government's excerpt, Mr. Smith was expressing his anxiety over the sentence he could be facing and his girlfriend gently chided him for making decisions that do not help him. See supra Fact Section, II.C. In Call 5, just before the government's excerpt, Mr. Smith was telling his girlfriend that if his federal case goes away – and he is sent to the state for five months for his parole violation – he would still miss the holidays. See supra Fact Section, II.D. In Call 6, Mr. Smith was upset that his parents were not being as supportive as he would like while he was in prison. See supra Fact Section, II.E. And although everyone thought that he was upset because he was in prison, this was not the case – and he didn't need anybody else. Id. He said that he put himself in this situation, and he would get himself out of the situation. Id. In Call 7, immediately before the government's excerpt, Mr. Smith refuses a tentative offer of financial help from his father. See supra Fact Section, II.F.

  In none of these conversations does Mr. Smith ever mention either a gun or marijuana. There is no way of knowing exactly what mistakes or decisions or situations he was referring to in these excerpts. Even under a reading of the comments most generous to the prosecution (and consistent with their theory of the case), Mr. Smith could be talking about resisting arrest, violating his parole, angering a police officer, or a multitude of other possibilities. By playing these highly selective excerpts to the members of the jury, however, the government would be

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 23, 2008  
Page 15

Re: **United States v. Jason Smith**  
    **08 Cr. 84 (DC)**

misleading them by making them think that Mr. Smith was somehow referring to possessing the gun and/or the marijuana. Why else would these short excerpts get played at trial except as a suggested confession? The only way Mr. Smith could rebut this would be by taking the stand himself to explain the meaning of his very general statements. Forcing Mr. Smith on the stand in this manner would violate his rights under the Fifth Amendment. See Marin, 669 F.2d at 85, n.6; see also supra Section I.A. For all of these reasons, the defense respectfully requests that the Court prevent the government from playing these four excerpts to the jury.

## CONCLUSION

For all the reasons discussed above, we respectfully urge Your Honor: (1) to order the government to supplement its chosen excerpt of the February 3, 2008 call with a later clarifying portion of the call, found at 5:48-6:10; (2) to preclude the government from playing its prejudicial and misleading four-second excerpt of the January 31, 2008 call; (4) to preclude the government from playing its four selected excerpts of the February 6, 2008, April 27, 2008, May 4, 2008, and May 10, 2008 calls on the grounds that these excerpts are irrelevant and prejudicial and would violate the Fifth Amendment.

Respectfully submitted,

*Fiona Doherty*

Fiona M. Doherty  
Deirdre D. von Dornum  
Assistant Federal Defenders  
Tel.: (212) 417-8734 / (718) 330-1208

cc: Amie Elie, Esq.  
    Assistant United States Attorney (by ECF and hand)

    Jason Smith  
    MCC, Register No. 60717-054 (by United States mail)



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 16, 2008

**BY FAX**

Deirdre D. von Dornum, Esq.
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11241

      Re:    United States v. Jason Smith,
              S2  08 Cr. 084 (DC)

Dear Ms. von Dornum:

      You have requested that the Government provide you with information about the calls that we are considering playing in our case-in-chief. Herein we provide a list of the calls we may move to enter into evidence. The Government reserves the right to supplement or modify this list if, upon further review of the calls, other calls or other portions of these calls appear pertinent. We will, of course, notify you if we wish to play additional material.

| Date and Time of Call | Approximate Time Range |
| --- | --- |
| January 31, 2008, 19:19:24 PM | 8:17-8:20; 11:06-11:10 |
| January 31, 2008, 22:01:38 PM | 14:52-15:08 |
| February 3, 2008, 20:29:32 PM | 3:12-3:15 |
| February 6, 2008, 22:10:44 PM | 6:45-7:07 |
| April 27, 2008, 13:12:11 PM | 13:13-13:22 |
| May 4, 2008, 19:01:26 PM | 3:00-3:07 |
| May 10, 2008, 21:46:52 PM | 4:23-4:27 |

Deirdre D. von Dornum, Esq.
July 16, 2008
Page 2 of 2

      In the event the defendant chooses to testify, we intend to cross-examine him on his attempts to procure false identification documents for his girlfriend, who is a convicted felon, so she can visit him at the Metropolitan Correction Center, which is discussed in at least these telephone calls: April 26, 2008, 20:14:49 PM; March 9, 2008, 21:55:16 PM; March 11, 2008, 22:03:43 PM; March 22, 2008, 12:05:07 PM; March 22, 2008, 13:22:56 PM; March 22, 2008, 22:07:41 PM. We may also question him about his discussions of cooperating witnesses, or "snitches," such as in his conversation of February 23, 2008, 18:08:39 PM, at approximately 7:48-8:40; and impeach him, if necessary, on his use of aliases, by offering, for example, the conversation of February 12, 2008, 21:58:14 PM, at approximately 2:15-2:45.

                                            Very truly yours,

                                            MICHAEL J. GARCIA
                                            United States Attorney

                                     By: *[signature]*
                                           Amie N. Ely/ Eric Snyder
                                            Assistant United States Attorneys
                                            Tel: (212) 637-2214/2534
                                            Fax: (212) 637-2527

EXHIBIT B IS A CD OF PHONE CALL RECORDINGS.