

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 23, 2008

**BY ECF AND FACSIMILE**

The Honorable Denny Chin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    ***United States* v. *Jason Smith*,**
              **S2 08 Cr 084 (DC)**

Dear Judge Chin:

      The Government respectfully submits this letter to respond to the defendant's July 18, 2008 motions in limine and to move to admit portions of certain telephone conversations that the defendant made while he was in custody at the Metropolitan Correction Center ("MCC"). The Government contends that we should be permitted to introduce evidence regarding the defendant's resistance to arrest and attempted flight; we should be permitted to introduce the fact that the gun was loaded; and we should be permitted to cross-examine the defendant regarding three of his prior felony convictions, should he choose to testify.[1] With the caveats noted below, however, we do not object to stipulating that the defendant has been convicted of a felony and redacting "a/k/a"s from the indictment, and we do not intend to introduce extrinsic evidence regarding the defendant's truthfulness.

---

    [1] As we note herein, if the defendant contends that he was not the aggressor in the altercation with Sergeant Baez, we may also seek to admit evidence regarding the defendant's prison disciplinary history and his earlier charges of resisting arrest.

The Honorable Denny Chin
July 23, 2008
Page 2 of 15

## DISCUSSION

I.    **The Injuries Sergeant Baez Sustained Should Be Admitted, As They are Probative of the Defendant's Consciousness of Guilt and Inextricably Intertwined with the Evidence Regarding the Charged Offense**

        The Government expects that the evidence will show that the defendant struck Sergeant Baez at least once after the defendant dropped a bag of marijuana to the ground, and then attempted to flee.[2]  While the defense "appreciates that some reference to Mr. Smith's flight and the struggle between him and Sergeant Baez is relevant to the government's case at trial," it requests that the Government be precluded from eliciting the details of the struggle between the sergeant and the defendant.  The Government respectfully submits that the Court should permit it to introduce the full narrative of the defendant's assaulting Sergeant Baez, attempting to flee, and resisting arrest.

        The Eleventh Circuit recently considered an appeal where the defense argued that the admission of evidence that he resisted arrest and assaulted a police officer "unduly prejudiced his case and had no probative value to the charge of possession of a firearm."  United States v. Wright, 392 F.3d 1269, 1275 (11th Cir. 2004).  Noting that Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," that Court held that

> [e]vidence of criminal activity other than the charged offense is not
> extrinsic under Rule 404(b) if it is (1) an uncharged offense which
> arose out of the same transaction or series of transactions as the
> charged offense, (2) necessary to complete the story of the crime,
> or (3) inextricably intertwined with the evidence regarding the
> charged offense.

Id. (quoting United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998)) (other citations

---

        [2]The defense notes on page 5, footnote 1 that the Government has not produced color photographs of the defendant taken after his arrest.  We are told that the only photographs taken of the defendant were his "booking" photographs.  As the Government advised the defense in a discovery letter dated July 15, 2008, we attempted to retrieve those photographs from the usual database.  The photographs have been removed from that database as we are told, is the normal course for state arrests that are dismissed by the state.  We attempted to obtain a color copy of the photograph from New York Police Department Headquarters and from the 48th Precinct, but were unsuccessful.  We learned on July 22, 2008 that the photographs are sealed, but are available with an unsealing order from the High Intensity Drug Task Trafficking Areas ("HIDTA").  We will submit such an unsealing order to the Court by Friday, July 25, 2008.

The Honorable Denny Chin
July 23, 2008
Page 3 of 15

omitted). The defendant's actions before the firearm was discovered provided the jury with "the body of the story, not just the ending." Id. As the evidence was "inextricably intertwined" with the offense charged, it was properly admitted. Id.; see also id. ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context . . . is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime . . . to complete the story of the crime for the jury." (quoting McLean, 138 F.3d at 1403)). The Eleventh Circuit rejected the defendant's Rule 403 argument, describing the suppression of evidence under that rule as "an 'extraordinary remedy . . . which should be used sparingly since it permits the trial court to exclude concededly probative evidence.'" Id. (quoting United States v. Fallen, 256 F.3d 1082, 1091 (11th Cir. 2001)). If the jury was given only the evidence of the discovery of the firearm, stripped of the context, it "would be relegated to its own, and possibly incorrect, assumptions about the events prior to officers finding the weapon." Id. at 1276. The "need to put a put a cohesive sequence of the crime before the jury" was, that court observed, an important interest; moreover, the evidence that the defendant resisted arrest was probative of his consciousness of guilt. Id. at 1277 (citation omitted). As a result, the evidence that the defendant resisted arrest and assaulted a law enforcement officer was relevant to proving the charged offense. Id.; accord United States v. Gardner, 1 Fed. Appx. 108, 109 (4th Cir. 2001) (holding that evidence regarding defendant's resistance to arrest was relevant to consciousness of guilt and not subject to exclusion under Rule 403).

The evidence that the defendant assaulted Sergeant Baez, attempted to flee, and resisted arrest is, first, relevant to prove consciousness of guilt; second, intertwined with the evidence that the defendant possessed marijuana and a firearm; and, third, not subject to exclusion under Rule 403. The Government therefore respectfully submits that we should be permitted to elicit evidence that the defendant punched Sergeant Baez before he attempted to flee, and to allow the sergeant to describe the struggle that ended only after the defendant tossed his gun under a parked car.

A.    **Resisting Arrest and Flight are Relevant to Prove Consciousness of Guilt**

The evidence that the defendant resisted arrest and attempted to flee is relevant to prove the defendant's consciousness of guilt. Over a century ago, the Supreme Court announced that "the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." Allen v. United States, 164 U.S. 492, 499 (1896). Wigmore likewise noted that "It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 John H. Wigmore, Evidence § 276, at 122 (James H. Chadbourn rev. 1979). The circuits, too, have held that "evidence of resistance to arrest and flight is admissible to demonstrate consciousness of guilt and thereby guilt." Ventura v. Atty. Gen., Fla., 419 F.3d 1269, 1290 (11th Cir. 2005) (citation omitted); see, e.g., United States v. Gardner, 1 Fed. Appx.

The Honorable Denny Chin
July 23, 2008
Page 4 of 15

108, 109 (4th Cir. 2001) (unpublished); United States v. Dinkane, 17 F.3d 1192, 1199-2000 (9th Cir. 1994); Moore v. Parke, 132 F.3d 36 (7th Cir. 1997) (unpublished); United States v. Roy, 843 F.2d 305, 310-11 (8th Cir. 1988) (flight); United States v. Graham, 548 F.2d 1302, 1313 n.13 (8th Cir. 1977) (resisting arrest); United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977); United States v. Ramirez, 460 F.2d 1322, 1323 (10th Cir. 1972) (resisting arrest); United States v. Serio, 440 F.2d 827, 832 (6th Cir. 1971).

　　　　　The fact that the defendant resisted arrest is thus probative of his guilt. The degree of that resistance is a relevant fact for the jury to consider: the jury should be permitted to determine whether the defendant's repeated attempts to evade capture, by assaulting the officer and attempting to flee, are indicia of his guilt. To limit the Government's proof to a generic assessment that the defendant "struggled" with the officers would keep from the jury from assessing the relevance of the degree of resistance. The Government should be permitted to elicit testimony from Sergeant Baez and Officer Leo regarding the circumstances of the defendant's stop and arrest, along with the recovery of the defendant's gun, including the defendant's assault of Sergeant Baez.

**　　　B.　　　This Evidence is Intertwined with the Evidence that the Defendant Possessed Marijuana and a Firearm**

　　　　　The defendant's resistance to arrest is intertwined with the evidence that the defendant possessed marijuana and a firearm. The Government expects the evidence to show that the defendant dropped a bag of marijuana to the ground and then struck Sergeant Baez in the face in an effort to increase his chances of getting away from the police with his gun. Only after the officers pursued the defendant and began to apprehend him did the defendant toss his gun. Because the evidence of the assault and the struggle is intertwined with the evidence that the defendant possessed marijuana and a firearm, the Government respectfully submits that the details of the resistance and flight should be admitted.

　　　　　"Relevant evidence is not confined to that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Evidence of a defendant's other acts evidence may be admitted where they are closely "intertwined" with the evidence regarding the charged offenses. Id. at 942. Evidence need only "add[] context and dimension to the government's proof of the charges" to be relevant. Id. at 941. Thus, a district court may admit evidence that does not itself establish an element. Id. This evidence may be admitted to provide background for the charges in the indictment—to show, inter alia, "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." Id. (quoting United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)). Evidence of other bad acts may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994). In Gonzalez, for

The Honorable Denny Chin
July 23, 2008
Page 5 of 15

example, the district court permitted the Government to introduce evidence suggesting that defendants who had been charged with being felons in possession of a firearm were fleeing from an attempted burglary when they had the weapons.  Gonzalez, 110 F.3d at 941-42.

Here, the Government expects the evidence to show that the defendant dropped a bag of marijuana on the ground, struck the sergeant with his fist, and ran.  Only after the sergeant chased the defendant was he eventually apprehended.  And only after the chase progressed down the street did the defendant toss his gun.  The defendant's assault upon and struggle with the officer were clearly intertwined with the arrest that led to the charges in this case.  The Government submits that it should not be required strip out material details from the narrative that explains the context of the defendant's arrest, including, for example, why the gun was found further down the street from where the defendant was originally approached.

C.     **The Evidence of the Assault and Flight are Not More Substantially More Prejudicial than Probative**

Federal Rule of Evidence 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  While Rule 403 vests in the district court "broad discretion to balance probative value against possible prejudice, United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004), it does not serve as "a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury."  United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998); accord United States v. Van Metre, 150 F.3d 339, 351 (4th Cir. 1998) (interpreting Rule 403 to require exclusion of evidence "'only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence'" (quoting United States v. Powers, 59 F.3d 1460, 1467 (4th Cir. 1995)).

Last month, the Second Circuit affirmed Judge Lynch's decision to admit an officer's testimony that the defendant made statements that suggested the defendant was involved in narcotics trafficking.  United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008).  In that case, the defendant was charged in a one-count indictment with being a felon in possession of a firearm.  Id. at 160.  The Circuit noted that the district court was not required to wait until "the defense had 'opened the door'" to the issue of the officer's credibility on cross-examination but instead properly found that the probative value of these statements was "'significant' because the primary issue at trial would be 'whether the officers saw what they say they saw with respect to the gun.'"  Id. at 162.  "Critical to the credibility of the officers' account was the reason why they chose to watch [the defendant] so closely," the circuit noted, observing that "[t]he experienced district judge further determined that the risk of prejudice from brief references to drug-dealing was relatively low in this case: 'I don't believe that references to drug dealing are somehow shocking or more prejudicial in comparison to the gun charge in the case.'"  Id.; see also United

The Honorable Denny Chin
July 23, 2008
Page 6 of 15

States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994) (holding that, where the defense theory was that government informants were lying, testimony that corroborated the informants' account was properly admitted under Rule 403); United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992) (Rule 403 not violated where evidence that defendant committed double murder admitted to establish possession of a firearm).

To the extent that the defendant is attempting to stipulate away the "full evidentiary force" of the assault and attempts to flee by conceding that the Government should be permitted to introduce that the defendant and Sergeant Baez "struggled," Old Chief is instructive. The Supreme Court has approved of the "familiar, standard rule" that permits the Government to "prove its case by evidence of its own choice," without permitting "a criminal defendant [to] stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." Old Chief v. United States, 519 U.S. 172, 186-87, (1997). As Justice Souter wrote:

> Evidence . . . has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. . . . [T]he evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

Id. at 188-89.

The testimony about the defendant punching the sergeant, his subsequent flight, and his resisting arrest is probative of his consciousness of guilt and is inextricably intertwined with the other facts about the charged conduct. It is not substantially more prejudicial than probative. Cf. Bermudez, 529 F.3d at 161 (permitting Government to introduce evidence in felon-in-possession case that the defendant was involved in the sale of narcotics); Fortenberry, 971 F.2d at 721 (permitting Government to introduce evidence in in felon-in-possession case that defendant committed double murder). The Government respectfully submits that it should not be

The Honorable Denny Chin
July 23, 2008
Page 7 of 15

required to set forth the sanitized version of the events leading to the arrest that the defendant proffers.

## II.    While the Government Will Agree Not to Introduce Evidence that the Gun Was Recently Discharged or Operable, It Should Be Permitted to Introduce Evidence that It Was Loaded

The defendant contends that this Court should preclude the Government from introducing evidence that the firearm the defendant possessed was loaded, recently discharged, or operable.  The Government will agree not to introduce evidence that the gun was recently discharged or was later found to be operable.  The Government respectfully submits that it should be permitted to introduce evidence that the gun was loaded, however, as that evidence is relevant and not substantially more prejudicial than probative.

Other circuits have uniformly affirmed district courts' decisions to admit evidence that a gun was loaded in felon-in-possession cases.  A recent Sixth Circuit decision found that evidence that a gun was loaded was relevant as the defendant claimed a defense of necessity and was not overly prejudicial.  United States v. Brown, 367 F.3d 549, 555 (6th Cir. 2004).  The defendant there argued, much as the defense does here, that because the statute did not require a loaded firearm, permitting the Government to introduce evidence that the gun was loaded ran afoul of Rule 403.  Id.

In United States v. Gloster, 185 F.3d 910, 912-914 (1999), the District of Columbia Circuit likewise affirmed a conviction where the defendant objected to evidence that the gun he possessed was loaded.  In doing so, the court first rejected the defendant's arguments that the fact that the gun was loaded was "not relevant to any matter properly provable to the court."  Id. at 912.  The court considered the defendant's claim that the gun belonged to another person in determining the relevancy of the evidence that the gun was loaded.  Id. at 913.  The fact that the gun was loaded and therefore dangerous made it less probable that the other person left the gun unattended and more probable that it was left in the possession of the defendant or that the defendant himself "had it in the first place."  Id.  As these were facts "of consequence to the determination of the action," the evidence that the gun was loaded was relevant.  Id. (quoting Fed. R. Evid. 401).

The Gloster court also rejected the defendant's argument that it was error to admit evidence that the gun was loaded before proof that the other person may have possessed the gun was in evidence.  Id.  The court noted that the fact that the gun was loaded was relevant to support the government's claim that the defendant possessed the gun, regardless of whether anyone else testified about the gun.  Id.  Moreover, the theory in the defense's opening statement was that someone other than the defendant put the gun on the steps.  Id.  Finally, the court rejected the defendant's Rule 403 argument.  Recognizing that a loaded gun may well suggest a

The Honorable Denny Chin
July 23, 2008
Page 8 of 15

"different threat of danger" than an unloaded gun, the court observed that it was "that very dangerousness that makes it less likely someone simply left the gun unattended on a step." Id. at 913-14 (citation omitted).  Rule 403 applies not to mere "prejudice" but only to "the 'danger of unfair prejudice,' and gives the court discretion to exclude evidence only if that danger 'substantially outweigh[s]' the evidence's probative value." Id. at 914 (citation omitted).

        Brown and Gloster counsel that it is appropriate to consider the defense likely to be mounted against the Government in assessing whether to admit the fact that a gun is loaded. Without knowing the claims that the defendant will make, the Government presumes that defendant will contend that the gun did not belong to him.  The fact that the gun was loaded is relevant, and could help explain why the defendant tried so mightily to evade capture.  Gonzalez, 110 F.3d at 941  Moreover, as the District of Columbia Circuit noted, that the gun was loaded may make it less likely that it was simply abandoned under a car—should the defense choose to make that claim.  Gloster, 185 F.3d at 913.

        The Government should, moreover, be permitted to introduce the evidence because the defendant has been charged with possessing a gun and seven bullets.[3]  If the Government is precluded from introducing the fact that the gun was loaded, it is likely that the jury will be confused about from where the bullets were retrieved.  As the Supreme Court noted in Old Chief, "People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." 519 U.S. at 189.  If the jury has to speculate about where these bullets originated, the Government could well be seen as "responsible for cloaking something"—and, as Old Chief counsels, we have reason to be apprehensive that the jury may hold this missing fact against us. Id.

        Finally, the evidence that the gun was loaded should not be excluded under Federal Rule of Evidence 403.  Rule 403 "does not generally require the government to sanitize its case . . . or to tell its story in a monotone." United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998).  The "different threat of danger" posed by a loaded gun is not so unduly prejudicial that this Court should exclude the fact that the gun was loaded where that evidence is relevant and where the exclusion of that evidence is likely to confuse the jury.  Gloster, 185 F.3d at 913.  Moreover, as the defense will presumably contend that the defendant did not, in fact, possess the gun, the prejudice that he would face is minimal.

_____

        [3]The defendant has not moved to preclude the evidence that the defendant possessed ammunition, which was charged in the indictment.

The Honorable Denny Chin
July 23, 2008
Page 9 of 15

**III.    The Government Will Agree to the Prior Felony Conviction Stipulation and Will Not Seek to Introduce Evidence of the Defendant's Prior Convictions in Its Case-in-Chief**

   The Government will not seek to introduce evidence of the defendant's prior felony convictions in its case in chief if defense counsel stipulates that the defendant has been convicted of a felony.  However, the Government respectfully requests to reserve the right to revisit whether to introduce evidence of the defendant's convictions for assault and resisting arrest if the defense calls into question the propriety of the stop and the arrest.  Fed. R. Evid. 404.

**IV.    The Government Should Be Permitted to Cross-Examine the Defendant on His Prior Convictions, Should He Decide to Testify**

   For the reasons asserted in Part II of our motion in limine dated July 17, 2008, the Government contends that we should be permitted to cross-examine the defendant on certain prior convictions if he takes the stand.

**V.    The Government Will Not Introduce Extrinsic Evidence to Impeach the Defendant's Character for Truthfulness**

   The Government agrees that it cannot impeach the defendant with extrinsic evidence regarding his attempts to procure documents that he believed would permit his girlfriend to visit him in prison; his use of aliases; and his concerns about speaking with cooperators.  We note that the defense concedes that it would be appropriate for the Government to inquire of the defendant whether he attempted to procure false identification documents for his girlfriend and used aliases.  Def's Mot. at 16.  However, the Government seeks a ruling regarding the permissibility of inquiring, should the defendant take the stand, into the defendant's concerns about cooperators.

   The defense contends that the Government should not be permitted to cross-examine the defendant regarding his "dim view of cooperators."  Def's Mot. at 16.  The defendant remarked in several conversation that, in essence, he was unable to speak freely with other inmates because he believed those inmates were cooperating with the Government.  The defendant's concerns about cooperators are thus relevant to his guilt.

**VI.    Redaction of "a/k/a"s From Indictment**

   The Government has no objection to redacting the "a/k/a"s from the indictment.  Should, however, it become necessary to refer to or admit evidence of the defendant's prior convictions or prison disciplinary history under a name other than "Jason Smith," the Government respectfully requests the right to revisit this issue.

The Honorable Denny Chin
July 23, 2008
Page 10 of 15

## VII.     The Government Should Be Permitted to Introduce Certain Recorded Phone Calls Made By the Defendant While He was in Custody

        The Government provided to defense counsel on or about June 26, 2008 three compact discs ("CDs") containing recordings made of telephone conversations between the defendant and others.  On July 14, 2008, the Government informed the defense counsel about several calls that the Government considered playing at trial.  On July 16, 2008, the Government provided defense counsel with a letter that set forth a few additional calls and the time stamps for all of the calls that we are considering playing as part of our case-in-chief.  Defense counsel and the Government have discussed the phone calls and have come to an agreement on several of the calls.  The Government has agreed to play portions of the certain calls that the defendant requests in addition to the portion of the calls we intended to play, if we choose to enter these call into evidence.  We were unable to reach an agreement on other calls, however.  For the reasons stated below, the Government respectfully submits that we should be permitted to play certain portions of the following five calls.[4]

### A.     The Calls

        Below, we include portions of the calls we would like to play.  We have included more of the conversation than we request to play to put the conversation in context; however, we would like to play only the portion that is bold.

#### 1.     February 3, 2008, 20:29:32 PM, at 3:12-3:15

This phone call is between the defendant and his mother, Nilda Mercado.

JS: Oh alright.  Ma they gonna put me away for a long time, Ma.
Nilda Mercado ("NM"): No they're not.  Why?
JS: Eh eh Mom, I got three felonies and **I got caught with a gun.**
NM: Where they gonna put you?  Upstate?
JS: Nah,  it's federal prison, they could put me anywhere in the United States.  Far.
NM: They probably put you upstate like where I used to go see you.
JS: Nah Ma, that's the state Ma.  They could give me 17 years right now.  Fifteen years.

Based on our discussions with defense counsel, we understand that they intend to

---

    [4]The Government advised defense counsel that it intended to request to play a sixth call in which the defendant says to someone named Pedro, "You got terrorists in the building.  Dude, you talkin' about nigga me, with a gun?  Get the fuck out of here."  After further consideration, we are withdrawing our request to play this call.

The Honorable Denny Chin
July 23, 2008
Page 11 of 15

argue that the Government should also be required to play a portion of the conversation that occurs over two minutes later in the conversation, from 5:48-6:10. The portion the Government understands them to request is, again, in bold.

> JS: I only got a gun Ma, but I got three felonies, Ma. And with the new law they got out, **and I didn't even have the gun on me, Ma.**
> **NM: Where, they didn't see you with it?**
> **JS: Nah, the police is lying. They found it under a car and they sayin' that it's mine. They didn't see me with it, he didn't see it on me, he ain't catch it on me, it was underneath a car. [a few words of Spanish]**

**2.      February 6, 2008, 22:10:44 PM, 6:45-7:07**

This call is between the defendant and his girlfriend, Quasheeba Campbell.

> JS: I don't know man, behind bars, it's lonely, ma. Huh? Hello?
> Quasheeba Campbell ("QC"): Hello?
> JS: I'm cursed.
> QC: No. You just do that shit to yourself.
> JS: Why?
> QC: 'Cause you hard-headed. I don't know why, you tell me why.
> JS: How you saying I'm hard-headed, a'ight. You just as stubborn, stop playing
> QC: Ok, I'm just as stubborn but at the same time I know how to do shit that benefits . . .
> JS: Alright.
> QC: instead of harms me. I still make wise decisions, baby.
> JS: Alright, yeah I know, **I made fucked up decisions, ma.**
> **QC: I know, everybody does from time to time, it's ok.**
> **JS: I know but I'm going to be paying for the rest of my life for this one.**
> **QC: No you not, how you gonna say that?**
> **JS: Hey, ok. It's short of a miracle, God's divine intervention**
> PC: You know, I'm saying baby [unintelligible].
> J: Ma, if I come out of this, I'm telling, I'm going to church.

**3.      April 27, 2008, 13:12: 11, 13:13-13:22**

The call is also between the defendant and Ms. Campbell.

> JS: I got ninety days until court, ma.
> QC: I know.

The Honorable Denny Chin
July 23, 2008
Page 12 of 15

JS: It's good, go on in there.
QC: I'm just ready for you to come home.
JS: I still got to do five months in the state for my violation man. But that go like that because you can come and the visits over there is eight hours.
QC: Ok then . . . I want. . .
JS: and more, I missed the holidays so . . . **it's alright, it's the punish I pay for being disobedient and doing what I want to do.**
QC: Don't remind me.

**4.      May 4, 2008, 19:01:26 PM, 3:00-3:07**

This call is between the defendant and his mother, Ms. Mercado.

JS: Because it's like you taking off on my dad. My dad ain't got nothing to do with it. I had lend him money, everything so sensitive, everything I do or say. I'm telling him the truth. When I tell the truth everybody get mad. Everybody always—"Oh forget him, he's just mad because he's locked up." **No, I'm not mad because I'm locked up. I put myself in this situation, I'll get myself out of this situation.** I'm just saying, when it's right there and I'm doing what I gotta do, it's all good. Everybody's [unintelligible] No, when I need—nah, I don't have—I've been in here 90 days, I haven't gotten not one visit and only . . .
NM: You only get visitors on what time on Thursday?
JS: I don't want a visit. I'm not saying, I'm not going to sit here and beg for a visit ma. I'm not going to beg for a visit. It should be come naturally. . . .

**5.      May 10, 2008, 21:46:52, 4:23-4:27**

This call is between the defendant and his father.

JS: Yeah, that's the problem you gotta pay for everything in here. It's not like the state. You know, everything costs. You gotta have money in your account to make a phone call, you gotta have money to buy stamps, all that, and everything costs. Nothing is, nothing is free. You gotta buy your clothes. You can't get packages, nothing, everything you have to buy. So the situation is not, is not good right now. Just wanted to let you know, that's the situation. Ain't no feelings involved, but . . . Hope it ain't going to create no feelings. Cause I just, I can't write like that. Sometimes, I'm not, I'm not even in the right frame of mind to put my thoughts on paper. Know what I mean? Hello?
Dad: Yeah, I hear you, I hear you. Well, uh, when Mr. Bush, uh, sends me some of that uh, rebate, I'll send you know a couple of dollars. Maybe thirty or something.

The Honorable Denny Chin
July 23, 2008
Page 13 of 15

> JS: No, it's alright dad, don't, don't, keep your money, dad. **I'm good. I put myself in the situation, I'm gonna stand by it, you know.** I even ask my ma to come and see me. I needed to talk some legal stuff with her, on a visit, but she got her little, she goes to her little Tuesday, Thursday, and Friday, her little support group. . . .

**B.      Analysis**

When offered by the Government, a defendant's statement is admissible both (a) under Federal Rule of Evidence 801(d)(2)(A) as a statement of the opposing party, and (b) to show that the defendant made false representations to the authorities, from which the jury could infer a consciousness of guilt, and hence guilt. United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). The Government is under no obligation to offer exculpatory statements when it offers inculpatory admissions. See United States v. Branch, 91 F.3d 699, 728 (5th Cir. 1996) (finding that "self serving [exculpatory] statement that does not contradict, explain, or qualify the rest of the statement" did not need to be offered by Government under rule of completeness when Government offered inculpatory statements); United States v. Smith, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (holding that district court did not err in precluding cross-examination on portions of post-arrest statement describing relationship to co-defendant and implicating co-defendant when Government offered admission that defendant had been present at the time of co-defendant's arrest).

The defendant does not have a parallel ability to offer his own statements into evidence. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible. When the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit." Marin, 669 F.2d at 84. Accordingly, a defendant may not introduce or elicit testimony concerning his own statements unless there is a valid, non-hearsay basis to admit such statements.

A defendant is not entitled to introduce a portion of a communication that contains his own exculpatory statements. In United States v. Capaldo, the Second Circuit affirmed a district court's decision to preclude a defendant from introducing a portion of his grand jury testimony. 402 F.2d 821, 824 (1968) (Lumbard, J.). The prosecution had introduced portions of the defendant's testimony referring to his purchase of "horses, saddles and a diamond ring for his girl friend"—presumably items purchased with the proceeds of a bank heist. Id. The defendant sought to introduce other portions of his grand jury testimony in which he claimed that he had borrowed money from his co-defendant. Id. Granting that these statements "were not totally unrelated to those admitted," Judge Lumbard held that the district court was well within its discretion in excluding the testimony the defendant sought to admit because the proffered

The Honorable Denny Chin
July 23, 2008
Page 14 of 15

portions "were not essential to a fair and impartial understanding of the statements" the prosecution moved into evidence. Id.

Under Rule 106, an omitted portion of a statement may be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989); see also United States v. Weisman, 624 F.2d 1118, 1128 (2d Cir. 1980). The "completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Jackson, 180 F.3d 55, 73 (2d Cir.), on reh'g, 196 F.3d 383 (1999). The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer. United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent."); cf. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988) (noting, in dicta, that there the "concerns underlying Rule 106 [were] relevant," but deciding the issue on alternative grounds).

"Rule 106 does not 'render admissible evidence that is otherwise inadmissible,'" however. United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001) (quoting United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983)), amended on other grounds, 298 F.3d 124 (2d Cir. 2002). Unless the defendant demonstrates that the statements he seeks to admit are otherwise admissible, his Rule of Completeness argument fails. Id.; see also United States v. Ortega, 203 F.3d 675, (9th Cir. 2000) ("Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay."); United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (the Rule of Completeness does "not render admissible the evidence which otherwise is inadmissible under hearsay rules").

Here, the Government seeks to admit the defendant's statement to his mother that he "got caught with a gun." This statement is admissible under Federal Rule of Evidence 801(d)(2)(A), Marin, 669 F.2d at 84, and the Government is not required to offer the later, exculpatory statement. Branch, 91 F.3d at 728. The defendant's claims over two minutes later that the police are lying is not admissible under the Rule of Completeness. The later statements are not necessary to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. Alvarado, 882 F.2d at 650 n.5. Instead, the claim that the police are lying neither explains nor is relevant to the passage the Government wishes to play.[5] Jackson, 180 F.3d at 73. Moreover, even if the Rule of

_____

[5]The portion of the conversation defense wishes to play is arguably not inconsistent with the portion the Government intends to play: it is possible that the defendant believed that the

The Honorable Denny Chin
July 23, 2008
Page 15 of 15

Completeness did apply here, Rule 106 is negated when the statement constitutes otherwise inadmissible hearsay. Guevara, 277 F.3d at 127. For these reasons, the Rule of Completeness does not apply. Finally, Rule 403 does not warrant exclusion of the portion of the telephone call we wish to play. See United States v. Bufalino, 683 F.2d 639 (2d Cir. 1982) (tape recording of extortion threat replete with obscenities not unduly prejudicial).

       The other telephone calls the Government wishes to play contain the defendant's admissions that he is in some way responsible for his incarceration. In none of them does the defendant admit to having a gun, but they are still, nonetheless, evidence of the defendant's consciousness of guilt.

## CONCLUSION

       The Government respectfully requests to be permitted: to introduce evidence regarding the defendant's assault of Sergeant Baez, resistance to arrest, and attempted flight; to introduce evidence that the gun was loaded; and to cross-examine the defendant regarding three of his prior felony convictions, if he takes the stand. The Government also seeks to admit the listed portions of the telephone calls.

Respectfully,

MICHAEL J. GARCIA
United States Attorney

By: _Amie N. Ely_

Amie N. Ely/ Eric Snyder
Assistant United States Attorneys
Telephone: 212-637-2214

cc:    Deirdre D. von Dornum, Esq. (by fax: 718-855-0760)

---

police had to catch him with the gun in his physical possession for him to be charged with possessing it. The defendant may have believed that the fact that he discarded the firearm before he was finally apprehended inoculated him from gun possession charges, and that the police must have claimed they retrieved the gun directly from him.