UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

UNITED STATES OF AMERICA        :        08 CR. 84 (DC)

           - v. -                :

JASON SMITH,                    :

              Defendant.        :

-------------------------------------------------X

## DEFENDANT JASON SMITH'S REPLY MEMORANDUM FOR MOTIONS *IN LIMINE*

                                                          LEONARD F. JOY, ESQ.
                                                          Federal Defenders of New York
                                                          Attorney for Defendant
                                                          **JASON SMITH**
                                                          52 Duane Street - 10th Floor
                                                          New York, New York 10007
                                                          Tel.: (212) 417-8734


                                                          **FIONA M. DOHERTY**
                                                          **DEIRDRE D. VON DORNUM**

                                                          Of Counsel


TO:    **MICHAEL J. GARCIA, ESQ.**
         United States Attorney
         Southern District of New York
         One. St. Andrew's Plaza
         New York, New York 10007
         Attn: **AMIE N. ELY, ESQ.**
             Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

Southern District of New York
John J. Byrnes
*Attorney-in-Charge*

July 25, 2008

**BY HAND AND ECF**

Honorable Denny Chin
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Jason Smith**
             **08 Cr. 084 (DC)**

Dear Judge Chin:

      We write to reply to the government's letter-brief of July 23, 2008, which opposed Mr. Smith's motions *in limine* and moved to admit five excerpts of Mr. Smith's telephone conversations, recorded at the Metropolitan Correctional Center (the "MCC"). In this letter, the defense responds to the government's arguments: (1) that eliciting details of the arrest struggle and Sergeant Baez's injuries is necessary to establishing its case; (2) that it should be allowed to play an allegedly inculpatory excerpt of Mr. Smith's February 3, 2008, phone call without playing the later exculpatory section; and, (3) that four additional phone call excerpts – dated February 6, 2008, April 27, 2008, May 4, 2008, and May 10, 2008 – can be properly admitted.

I.    DETAILS OF THE ALLEGED PUNCH AND THE INJURIES TO SERGEANT BAEZ ARE NOT NECESSARY TO ESTABLISH "CONSCIOUSNESS OF GUILT" OR TO TELL THE STORY OF THE ARREST.

      In its brief, the government proffers that its evidence will show that Mr. Smith "struck Sergeant Baez at least once after dropping a bag of marijuana to the ground, and then attempted to flee." See July 23, 2008, Government Letter ("Gov't Br.") at 2. According to the government, Sergeant Baez pursued Mr. Smith and there was a "struggle that ended only after the defendant tossed his gun under a parked car." Id. at 3, 5. The government argues that the details of Sergeant Baez's injuries should be admitted because: (1) "evidence that the defendant resisted arrest and attempted to flee is relevant to prove the defendant's consciousness of guilt," id. at 3; (2) "the defendant's resistance to arrest is intertwined with the evidence that Mr. Smith possessed marijuana and a firearm." Id.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 25, 2008  
Page 2

Re: **United States v. Jason Smith**  
    **08 Cr. 084 (DC)**

In our July 18, 2008, motion, we did not seek to preclude the government from eliciting testimony that there was a "struggle" between Sergeant Baez and Mr. Smith, that Mr. Smith tried to flee, that the officers gave chase, and/or that Mr. Smith sought to resist arrest. We understand that this testimony is relevant to the story of the arrest and that the government will seek to use the evidence of the struggle and flight as proof of "consciousness of guilt." What we objected to in our motion was the fact that the government wants to dwell on the details of the struggle – and in particular the alleged punch and the injuries to the police officer depicted in the photographs. We do not believe that eliciting this kind of detail – which would be highly prejudicial to Mr. Smith – is necessary for the government to tell the narrative of the arrest or to argue to the jury that Mr. Smith's actions evinced "consciousness of guilt."

With respect to the narrative of the arrest, the government does not explain why it is so important that the jury members hear the details of the punch or that they examine the graze underneath Sergeant Baez's chin or the cuts to his knees and knuckles. See Gov't Br. at 5. Instead, the government argues only generally that they should not be "required to strip out details from the narrative" that explain the context of the arrest. Id. at 6. But the example the government cites immediately thereafter – that it must be able to explain why the gun was found further down the street than where Mr. Smith was arrested – does not support its argument. Id. The defense has not objected to the officers testifying that Mr. Smith ran, that they gave chase, or that he allegedly threw the gun further down the street than where he was initially apprehended. We objected only to the government's desire to elaborate on prejudicial details of the struggle, itself, that are not necessary to establishing the context of the arrest.[1] Because these additional details are more prejudicial to the defense than they are probative, they should not be admitted under Rule 403. See Fed.R.Evid. 403.

With respect to consciousness of guilt, the government argues that a "generic assessment that the defendant 'struggled' with the officers would keep the jury from assessing the relevance of the degree of resistance." Id. at 3. The defense has not argued, however, that the government

---

[1] The government cites an Eleventh Circuit case, United States v. Wright, 392 F.3d 1269 (11th Cir. 2004), in support of its argument. See Gov't Br. at 2-3. In Wright, the Eleventh Circuit found that in the circumstances of that case, the evidence of the defendant's resistance to arrest and his battery on a law enforcement officer were necessary to putting on a cohesive story for the jury. See 392 F.3d at 1276-77. In this case, however, the defense is not trying to prevent the government from putting on a cohesive story; the jury will know that the defendant allegedly struggled, ran and resisted arrest. Similarly, unlike the situation in United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008), the details that the defense seeks to preclude do not leave the police looking like they acted illegally or without good reason. See Gov't Br. at 5.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 25, 2008  
Page 3

Re: **United States v. Jason Smith**  
**08 Cr. 084 (DC)**

must be limited to a generic use of the word "struggle." Again, we propose that the government be permitted to introduce testimony that there was a struggle, that Mr. Smith attempted to flee, and that the officers gave chase before apprehending him. This testimony would give the government plenty of room to argue "consciousness of guilt," assuming that it is able to link such testimony to "consciousness of guilt" of the crime charged.

The government's arguments on "degree of resistance," moreover, as a means to elicit details of the punch and injuries, would make Sergeant Baez's own actions during the arrest all the more relevant, leading to a mini-trial on his use of force. As noted in our opening papers, the defense believes that Sergeant Baez used unnecessary force against Mr. Smith, hitting him and slamming his head into the ground. Any testimony about the particular ways in which Mr. Smith resisted Sergeant Baez (and what injuries he allegedly caused) begs the question of what exactly Mr. Smith was resisting – his own arrest or Sergeant Baez's abusive conduct? Thus, if the government is allowed to bring out details of the struggle, the defense must be allowed to freely elicit testimony about Sergeant Baez's actions during the arrest and the injuries that Mr. Smith suffered.

II. THE GOVERNMENT SHOULD NOT BE ABLE TO PLAY ITS FEBRUARY 3, 2008 EXCERPT IN ISOLATION.

In its brief, the government moved to admit a three-second excerpt of Mr. Smith's February 3, 2008, phone conversation with his mother. See February 3, 2008 call, 20:29:32 P.M., 3:12-3:15. In a July 23, 2008 motion, the defense separately moved to preclude the government from admitting this excerpt without also introducing a later portion of the same call, in which Mr. Smith directly contradicted the government's desired interpretation of his earlier remark.

The government wants to play the six bolded words of the following sentence: "Ma, I got three felonies, and **I got caught with a gun.**" Id. This excerpt comes at 3:12-3:15 of the call. If these six words are played, then the defense requests that the government be ordered to play the following excerpt approximately two minutes later in the call:

> Mr. Smith: "And I didn't even have the gun on me, ma."  
> Mother: "They didn't see you with it?"  
> Mr. Smith: "Nah, the police was lying. They found it under a car, and they saying that it's mine. He didn't see me with it, he didn't see it on me, he didn't catch it on

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 25, 2008  
Page 4

Re: **United States v. Jason Smith**  
    **08 Cr. 084 (DC)**

> me. It was underneath a car. Y están diciendo que es mio." [Translation: "And they're saying that it's mine."]

Id. at 5:48-6:10.

In its brief, the government acknowledges that under Rule 106, an omitted portion of a statement may be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. See Gov't Br. at 14. The government then argues that "the claim that the police are lying neither explains nor is relevant to the passage the Government wishes to play." Id. In the defense's excerpt, however, Mr. Smith is saying much more than "the police was lying." Indeed, it is hard to imagine a statement that could be more relevant to – or more thoroughly contradict – the government's interpretation of its own excerpt. In the government's excerpt, Mr. Smith said, "I got caught with a gun." In the defense's excerpt, he clearly denied being caught with a gun. He also stated that the police were lying in saying that the gun was his.

Playing only the first statement – pulled completely out of context – would serve to thoroughly mislead the jury. If only those six words are played, the words will inevitably be considered a clear confession by the jury. Kept to only those six words, the jury would not be able to hear the remarks that Mr. Smith makes immediately before and after the excerpt. These contextualizing remarks, which are focused on the possible sentence he faces and where he might be sent by the BOP, would help establish for the jury that Mr. Smith is talking about the fact that he has been charged with having a gun (and that he is not confessing to actually possessing the gun). This interpretation of Mr. Smith's remarks is much more forceful when considered alongside the excerpt that the defense seeks to play, in which Mr. Smith stated that the police were lying in claiming that the gun was his. If Mr. Smith had already told his mother that he possessed the gun, why would he tell her a couple of minutes later (during the same portion of the conversation) that the gun was not his?

The defense understands the problems with playing the remarks immediately surrounding the government's excerpt. These remarks would inform the jury of the possible length of the sentence Mr. Smith is facing, a topic which the government has sought separately to preclude in its *in limine* motions. The defense's proposed excerpt presents no such problems, however. The remarks in the defense's excerpt are essential, moreover, to explaining Mr. Smith's earlier statement, putting that remark in context, and ensuring that the remark receives fair and impartial consideration by the jury. See United States v. Castro, 813 F.2d 571, 575-76 (2d Cir. 1987).

Honorable Denny Chin                                      July 25, 2008
United States District Judge                              Page 5
Southern District of New York

      Re:   **United States v. Jason Smith**
              **08 Cr. 084 (DC)**

      The government also argues that even if the defense's excerpt should be played under the fairness principles of Rule 106, the defense excerpt can only be played if the defense can separately establish that Mr. Smith's remarks do not constitute inadmissible hearsay. As a preliminary matter, it is far from clear that the Second Circuit requires the defense to establish an exception to the hearsay rules for these purposes. In United States v. Johnson, 507 F.3d 793 (2007), for example, the Second Circuit specifically noted that under Rule 106, "even though a statement may be hearsay, an 'omitted portion of [the] statement *must be* placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" Id. at 796 (emphasis added) (citations omitted). The Second Circuit's Johnson decision came six years after United States v. Guevara, 277 F.3d 111 (2d Cir. 2001), the Second Circuit case cited by the government. See Gov't Br. at 14.

      The defense would not be offering Mr. Smith's statement, moreover, for the truth of what he is asserting in the supplemental excerpt that we wish the jury to hear. See Fed.R.Evid. 802 (hearsay only includes statements "offered into evidence to prove the truth of the matter asserted"). The statement would be offered for one purpose and one purpose alone – to explain and clarify the meaning of the earlier remark that the government is seeking to play. If the government chooses not to play its excerpt, then there would be no reason for the defense excerpt to be played. The defense excerpt would also qualify under the exception for "circumstantial evidence of the declarant's state of mind" at the time of the call. See Fed.R.Evid. 803(3) (state of mind exception to the hearsay rules); United States v. Gotti, 457 F.Supp.2d 395, 397-99 (S.D.N.Y. 2006). Furthermore, as a matter of fairness, the government should not be allowed to use the hearsay rules as both an improper sword (by playing a statement that is inculpatory only if heard out of context) and as an improper shield (by preventing the explanatory context from being played). See F.R.Evid. 807 (residual exception to hearsay rules); F.R.Evid. 611(a) (granting trial judge control over the mode of presenting evidence to make the presentation effective for the ascertainment of the truth).

      For all of these reasons, the defense respectfully requests that if the government chooses to play its three-second excerpt for the jury, the Court order that the defense excerpt must also be played.

Honorable Denny Chin  July 25, 2008
United States District Judge  Page 6
Southern District of New York

    **Re:**   **United States v. Jason Smith**
           **08 Cr. 084 (DC)**

III.    THE REMAINING FOUR EXCERPTS OF MR. SMITH'S MCC CALLS SHOULD BE EXCLUDED.

    In its July 23, 2008 motion, the defense urged the Court to exclude the remaining four excerpts in contention – dated February 6, 2008, April 27, 2008, May 4, 2008, and May 10, 2008. As discussed in detail in our brief, all four of these excerpts are general expressions of despair that cannot be considered inculpatory in reference to the charges against Mr. Smith. Nevertheless, if they are pulled out of context and played for the jury, they will be made to seem much more relevant, probative and inculpatory than they actually are.

    In its brief, the government cannot – and does not – argue that the statements refer directly to the gun or marijuana charges against Mr. Smith. Instead, the government seeks to admit them because they contain "admissions that he is in some way responsible for his incarceration" and thus represent "consciousness of guilt." Gov't Br. at 15. But even if the government is right, this just begs the question: what is Mr. Smith conscious of being guilty of? Even under the government's theory of the case, for example, he could be referring to violating his parole, disappointing his girlfriend, or getting into a struggle with a police officer. Playing the excerpts in isolation, as the government requests, would mislead the jury into thinking that Mr. Smith was somehow talking about the charges against him in this case.

    For one of these calls, moreover, the defense submits that the government's transcript is inaccurate in a material respect. For this call, dated April 27, 2008, we believe the transcript should read as follows (material differences from government's transcript in italics, cf. Gov't Br. at 11-12):

    JS: I got ninety days till court, ma.
    QC: I know.
    JS: It's good, good going in there.
    QC: How long before you come home?
    JS: I still got to finish five months in the state for my violation, man. But that go like that because you can come – and the visits over there is eight hours.
    QC: *I don't care. I want you to come home.*
    JS: *I'll be home. I'm gonna miss the holidays, so.* It's alright. **It's the penance I pay for being disobedient and doing what I want to do.**

April 27, 2008 call, 13:12:11, 12:44-13:22.

Honorable Denny Chin  
United States District Judge  
Southern District of New York

July 25, 2008  
Page 7

Re: <u>United States v. Jason Smith</u>  
08 Cr. 084 (DC)

These differences from the government's transcript are significant, because they make clear that when talking about the penance he is paying, Mr. Smith is actually referring to having to do time on his state parole violation (and not just being incarcerated on his federal case). During this excerpt, Mr. Smith was telling his girlfriend that even if his federal case is over in 90 days, he still has to go to the state for five months on his parole violation, which means that he will miss the holidays. In the government's version of the transcript, however, Mr. Smith allegedly said that he had already missed the holidays because of his incarceration. This makes no sense, as Mr. Smith was not arrested until January 5, 2008.

Accordingly, as argued in our July 23, 2008 motion, the April 27, 2008 excerpt and the three other excerpts should all be excluded as irrelevant under Rules 401 and 402 of the Federal Rules of Evidence. <u>See</u> F.R.Evid. 401-402. They should also be excluded as more prejudicial than probative under Rule 403. <u>See</u> F.R.Evid. 403.

III. CONCLUSION

For all of these reasons, along with those raised in our earlier papers, the defense respectfully urges the Court to grant our motions *in limine* in their entirety.

Respectfully submitted,

*Fiona Doherty*  
Fiona M. Doherty  
Deirdre D. von Dornum  
Assistant Federal Defenders  
Tel.: (212) 417-8734 / (718) 330-1208

cc: Amie Ely, Esq.  
Assistant United States Attorney (by fax and ECF)

Jason Smith  
MCC, Register No. 60717-054 (by United States mail)